UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NEUROLOGY AND PAIN MANAGEMENT ASSOCIATES, P.C., *d/b/a* VANGUARD ELDERCARE, *a/k/a* VANGUARD ELDERCARE MEDICAL GROUP,<br><br>    Plaintiff,<br><br>    v.<br><br>ANTHONY BUNIN and BIO-BEHAVIORAL CARE SOLUTIONS, LLC,<br><br>    Defendants. | Case No. 3:17-CV-035 JD |

## **OPINION AND ORDER**

This is a case for breach of contract and related torts arising from a failed independent contractor relationship. Plaintiff Neurology and Pain Management Associates, P.C. ("Vanguard"), filed its complaint in Delaware County (Indiana) Circuit Court on September 26, 2016. Defendant Bio-Behavioral Care Solutions, LLC ("BCS"), removed the matter to the Southern District of Indiana[1] and the case then transferred therefrom to this District on January 12, 2017. [DE 38] The pleadings have closed and Defendants BCS and Anthony Bunin have moved for judgment on the pleadings. [DE 50] For the reasons stated herein, the Court will deny the motion.

---

[1] Robert Clemente joined BCS in removing the case, although he is no longer a party to this litigation. [DE 32]

1

# FACTUAL ALLEGATIONS

Vanguard, an Indiana corporation, provides psychiatric care services to seniors in outpatient offices, acute care hospitals, and long-term care facilities. On or about November 1, 2012, Vanguard hired Bunin as an independent contractor, and the two parties agreed to the terms set forth in a memorandum of understanding ("MOU"). At that time, however, Bunin still worked for one of Vanguard's direct competitors, BCS, as an executive officer. According to Vanguard, it had no idea that Bunin still served as BCS's employee because Bunin falsely informed Vanguard that he had ended his relationship with BCS.

Bunin's contract with Vanguard required him to perform various marketing and recruitment functions. Vanguard alleges, however, that from November 2012 until July 2015, Bunin failed to perform any services for Vanguard and instead worked surreptitiously for BCS the entire time. In particular, Bunin solicited Vanguard's customers and prospective customers on behalf of BCS as part of a scheme to divert their business away from Vanguard. Bunin kept Vanguard in the dark by continuously providing Vanguard's president with false reports detailing his "progress" in carrying out his responsibilities under the agreement. But in July 2015, Vanguard caught Bunin in his lies and terminated his contract. This lawsuit followed.

# STANDARD

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). Therefore, the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

Additionally, when pleading fraud, the federal rules set a higher bar. *Ello v. Brinton*, No. 2:14-CV-299, 2015 WL 7016462, at *2 (N.D. Ind. Nov. 10, 2015). Fed. R. Civ. P. 9(b) states that in fraud cases, "a party must state with particularity the circumstances constituting fraud." The Seventh Circuit has stated that Rule 9(b) "effectively carves out an exception to the otherwise generally liberal pleading requirements under the Federal Rules." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chi.*, 927 F.2d 988, 992 (7th Cir. 1991). To satisfy the requirement of Rule 9(b), a plaintiff pleading fraud must state "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted) (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)). Stated differently, a plaintiff pleading fraud must state "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d

436, 441 (7th Cir. 2011) ("Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled.").

## DISCUSSION

Vanguard's complaint alleges the following causes of action against both Defendants: constructive fraud (Count II); tortious interference with business relationships (Count V); and unfair competition (Count VI). As for Bunin individually, Vanguard alleges breach of contract (Count I), breach of fiduciary duty (Count III), and fraud (Count IV). The complaint lastly contains an unnumbered cause of action against BCS for tortious interference with contractual relationships.

Defendants seek dismissal of these claims on four basic grounds: (1) the breach of contract claim should be dismissed because Vanguard has not shown the existence of a valid contract; (2) the fraud and constructive fraud claims should be dismissed as insufficiently plead under Rule 9(b); (3) the unfair competition claim should be dismissed as insufficiently plead; and (4) several of the tort claims should be dismissed as improperly duplicative of the breach of contract claim. The Court addresses these arguments in turn.

**A.     Breach of Contract**

Vanguard maintains that Bunin violated the agreed-to terms of his employment agreement with Vanguard, thereby committing breach of contract. In Indiana, it is well settled that "[t]o recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007). Specifically, Vanguard alleges that it entered into an agreement with Bunin whereby it hired

Bunin as an independent contractor. [DE 39 ¶ 8] The terms of this agreement are contained in the MOU, which Vanguard attached to its complaint. *Id.* Generally speaking, the MOU required Bunin to market and promote Vanguard's nursing facilities in his assigned territory, new markets outside of his territory, provide specialized clinical support programs, and recruit clinical staff. *Id.* ¶¶ 10-11. The MOU also included a clause that prohibited Bunin from soliciting or diverting (or attempting to solicit or divert) clients, customers, etc., who were already under contract with Vanguard, and from interfering with Vanguard's business relationships. *Id.* ¶ 13. Vanguard alleges that Bunin breached this agreement by failing to provide any services required of him under the MOU, "surreptitiously working for BCS while he was supposed to be working for Vanguard," and "soliciting Vanguard's customers and potential customers on behalf of BCS." *Id.* ¶ 23. As a result of this breach, Vanguard alleges it suffered actual damages, special and/or consequential damages, and lost profits. *Id.* ¶¶ 27-28. Vanguard has therefore sufficiently alleged breach of contract.

Defendants argue that Vanguard cannot possibly "prove the existence of a contract" because the MOU attached to Vanguard's complaint lacks signatures and contains blank spaces regarding Bunin's compensation and scope of work. [DE 51 at 5-6] Defendants believe that this indicates a lack of acceptance or "meeting of the minds" necessary to prove that a valid contract existed. *Id.* at 5 (citing *Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 733, 737 (Ind. Ct. App. 2005). But at this stage in the litigation, Vanguard does not need to *prove* the existence of a valid contract – it only needs to state sufficient facts to support a claim for breach of contract that is plausible on its face, and indeed Vanguard specifically alleges that the parties "accepted and acted pursuant to" the MOU's terms. [DE 39 ¶ 8] The fact that Vanguard attached an unexecuted copy of the MOU to its complaint in order to highlight its terms does not negate the

possibility that the parties entered into a valid agreement at some point. For example, the MOU may have been signed at a later date, and there may be other documents or memorializations indicating as much. There may also be evidence that Bunin accepted the agreement through his conduct. Either way, these facts may be ascertained through discovery and Defendants' argument is better suited for summary judgment. *See Eastek Int'l Corp. v. Ingersoll-Rand Co.*, No. 10-C-3305, 2010 WL 4790912, at *2 (N.D. Ill. Nov. 16, 2010) (denying motion to dismiss breach of contract claim where plaintiff attached an unsigned agreement to its complaint but nonetheless alleged sufficient facts to state a claim); *see also McVay v. Store House Co.*, No. 1:16-cv-00644, 2016 WL 9461331, at *3 (S.D. Ind. Oct. 24, 2016) ("Whether the [unsigned] Amendment constitutes a valid contract is not to be decided at the motion to dismiss stage of the litigation."). Indeed, none of the opinions cited by Defendants in support of their position were decided on the pleadings.

Defendants also suggest that the lack of signature on the MOU renders the agreement unenforceable under the statute of frauds. Indiana's statute of frauds requires that "contracts which cannot be performed within one year must be in writing and signed by the party to be charged …." *Mehling v. Dubois County Farm Bureau Coop. Ass'n, Inc.*, 601 N.E.2d 5, 7 (Ind. Ct. App. 1992); *see also* Ind. Code § 32-21-1-1. However, "[t]he Statute of Frauds has always been held to apply only to contracts which, by the express stipulations of the parties, were not to be performed within a year, and not to those which might or might not upon a contingency, be performed within a year." *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 886-87 (Ind. Ct. App. 2000) (quoting and reaffirming *Silkey v. Investors Diversified Servs., Inc.*, 690 N.E.2d 329, 334 (Ind. Ct. App. 1997)). In other words, "only if it is *impossible* for an oral contract to be

completed within one year does it fall within the Statute of Frauds." *Tobin v. Ruman*, 819 N.E.2d 78, 85 (Ind. Ct. App. 2004).

As Defendants read it, the MOU "provides that it *will* last more than one (1) year," and therefore the breach of contract claim should be dismissed with prejudice because the MOU is unsigned. [DE 51 at 6 (emphasis added)] But the MOU's language belies this; it does not expressly state that the agreement will endure beyond one year. For example, the MOU excerpt cited by Defendants indicates that "[t]he parties intend to negotiate terms of a definitive agreement within one year following the date hereof …. *If* no definitive agreement has been determined within one year than [sic] this MOU shall automatically renew for an additional year." [DE 50-1 at 18 (emphasis added)] This carry-over clause does not automatically extend the life of the agreement beyond one year, but only does so in the event the parties do not reach a replacement agreement. In addition, the MOU states that it may be terminated "[u]pon the execution of a full-time Employment Agreement for [Bunin]." *Id.* at 22. Nothing else in the MOU prevents Bunin from entering into a full-time employment contract within one year, and this contingency places the agreement outside the statute of frauds. Therefore, Defendants' statute of frauds argument fails.

For these reasons, Defendants request to dismiss Vanguard's breach of contract claims against Bunin (Count I) will be denied.

**B.      Fraud and Constructive Fraud – Sufficiency Under Rule 9(b)**

Counts II and IV of Vanguard's complaint allege constructive fraud and fraud, respectively. Both of these claims rely on the same core set of allegations, but Defendants argue that Vanguard has not sufficiently plead them pursuant to the heightened requirements of Fed. R.

Civ. P. 9(b).[2] As expressed above, Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud," and again, that requires the plaintiff to state "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo*, 901 F.2d at 627.

>Defendants devote a single paragraph to their Rule 9(b) argument:
>
>Plaintiff states generally that Defendant Bunin solicited customers and business from Plaintiff and filed false reports showing that he was doing work that he never really did. However, Plaintiff does not state with sufficient specificity when this took place, where this took place, exactly what about Defendant Bunin's representations were false, or what Defendant Bunin received via his false statements. Plaintiff does not state the specific bases upon which his constructive fraud claim arises with respect to Defendant BCS at all. Accordingly, Plaintiff's fraud and constructive fraud claims should be dismissed for lack of specificity.

[DE 51 at 7-8] This generic characterization of the complaint, however, overlooks a considerable amount of detail. Vanguard does not merely "state[ ] generally" that Bunin siphoned customers and filed false reports. Rather, Vanguard supports its complaint with allegations setting forth the particularities of Bunin's fraud: prior to November 1, 2012, Bunin informed Vanguard and its principal that he was no longer working for one of its direct competitors, BCS. [DE 39 ¶ 5] According (and unbeknownst) to Vanguard, Bunin's representations were false. Vanguard hired Bunin as an independent contractor on or around November 1, 2012, but during his tenure with Vanguard, Bunin provided false information about his efforts. Specifically, Bunin lied about "his efforts to provide program and business development services, expansion of on-site psychiatric

---

[2] The Court notes that it does not accept Vanguard's position that arguments regarding the sufficiency of fraud allegations cannot be raised via a Rule 12(c) motion. [DE 54 at 10] Vanguard cites no authority in support of this theory, and indeed, district courts in this Circuit address Rule 9(b) arguments at this stage with regularity. *See, e.g.*, *Pringle v. Garcia*, No. 2:09-cv-022, 2014 WL 1651976 (N.D. Ind. Apr. 23, 2014) (construing *pro se* defendant's motion to dismiss as one for judgment on the pleadings and granting the motion where plaintiff failed to allege fraud-based RICO counts with the required particularity of Rule 9(b)); *see also CIVIX-DDI, LLC, v. Hotels.com, L.P.*, 711 F. Supp. 2d 839 (N.D. Ill. 2010) (on plaintiff's motion for judgment on the pleadings, addressing whether defendants alleged their inequitable conduct counterclaims and defenses with sufficient particularity under Rule 9(b)).

and psychological services, [and] marketing and other promotional services ...." *Id.* Also while under contract with Vanguard, Bunin further falsely informed Vanguard's president that he was

> meeting with customers and potential customers at Vanguard's existing facilities and other facilities, presenting them with programs and other materials, recruiting staff members for positions at hospitals, developing databases, [and] continuing expansion efforts and efforts to promote in-patient services and opportunities.

*Id.* ¶ 16. Vanguard goes so far as to even cite a specific episode of Bunin's alleged misrepresentations that occurred on July 8, 2015, during which Bunin falsely led Vanguard's president to believe that Bunin had been meeting with one of Vanguard's business contacts. *Id.* ¶ 17. Vanguard alleges it caught Bunin in this lie and terminated its relationship with him the next day. *Id.* ¶ 18. By misrepresenting that he was no longer employed by BCS, Bunin benefited from the award of a resulting contractor agreement with Vanguard, under which he received compensation from Vanguard while surreptitiously working for its competitor. *Id.* ¶¶ 19, 37, 49-50.

Simply put, Vanguard's complaint alleges everything that Defendants claim it does not. It sets forth when Bunin's fraud took place (prior to and during his tenure as an independent contractor, which ended July 9, 2015), what about his conduct was false (lying about not longer being employed by BCS and lying about his performance), and what he received as a result of his fraud (monetary compensation from Vanguard). And, contrary to Defendants' assertion, the complaint also states the basis by which Vanguard seeks to hold BCS liable for Bunin's constructive fraud, in that Bunin allegedly carried out his fraudulent scheme "on behalf of BCS," thereby imputing liability on BCS, his principal. The Court will therefore deny Defendants' request to dismiss Counts II and IV on the grounds that the complaint fails to sufficiently plead fraud.

C. **Unfair Competition**

Defendants ask the Court to dismiss Vanguard's claim for unfair competition (Count VI) solely because Vanguard's complaint does not contain any allegations that Defendants either "passed off" Vanguard's goods and services as their own, or that Defendants engaged in predatory pricing. However, Defendants' base this request on the misplaced understanding that common law unfair competition only includes the torts of "passing off," tradename infringement, and predatory pricing. Indiana courts have described unfair competition as "amorphous" in nature and "much broader" than the torts of passing off or predatory pricing. *Hammons Mobile Homes, Inc. v. Laser Mobile Home Transp., Inc.*, 501 N.E.2d 458, 462 (Ind. Ct. App. 1986); *Bartholomew Cty. Beverage Co. v. Barco Beverage Corp.*, 524 N.E.2d 353, 358 (Ind. Ct. App. 1988).[3] In Indiana, unfair competition "'also includes actions for the interference with a contract or business relationship ….'" *Keaton*, 842 N.E.2d at 820 (quoting *Bartholomew*, 524 N.E.2d at 358).

"Indiana courts have created a cause of action for unfair competition, defined as 'the attempt to create confusion concerning the source of the unfair competitor's goods.'" *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001) (quoting *Westward Coach Mfg. Co. v. Ford Motor Co.*, 388 F.2d 627, 633 (7th Cir.1968), *cert. denied*, 392 U.S. 927 (1968)). This definition, however, is rather open-ended. The *Felsher* court recognized the following:

> Unfair competition … does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts. The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values.

---

[3] "Nor does every ground of unfair competition require intentional wrongdoing," for that matter. *Keaton & Keaton v. Keaton*, 842 N.E.2d 816, 820 (Ind. 2006).

755 N.E.2d at 598 (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts*, 1015 (5th ed. 1984)). Here, Vanguard alleges that Bunin (on his own behalf and on the behalf of BCS) used Vanguard's solicitation methods on Vanguard's customers and potential customers, and that Bunin deceived those individuals in order to direct their business toward his own company, BCS. Given the open-ended nature of unfair competition recognized by Indiana courts, Vanguard's allegations sufficiently set forth a claim based on the theory that Defendants duped consumers in order to steer them away from Vanguard and toward BCS.

Defendants' argument regarding "passing off" and predatory pricing lacks basis. As Defendants have provided no alternatives as to why the Court should dismiss Vanguard's unfair competition claim, their motion will be denied as to Count VI.

### D. Contract-Based Tort Claims

Defendants also seek to dismiss Vanguard's claims for fraud, constructive fraud, breach of fiduciary duty, and tortious interference by invoking the principle that a party cannot repackage a breach of contract claim as a tort claim in an effort to seek additional damages. *Greg Allen Const. Co., Inc. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003); *Bayview Loan Servicing, LLC v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1068 (Ind. Ct. App. 2016) ("[A] party may not restyle a breach-of-contract claim as a tort simply to obtain additional damages."); *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364–65 (Ind. Ct. App. 2012) ("Where the source of a party's duty to another arises from a contract, tort law should not interfere."). Defendants argue that Vanguard cannot pursue these separate tort claims, which, according to Defendants, arise from the duties of the contract. However, they also dispute the validity of the contract itself, and they do not cite any authority in which an invalid contract triggered this doctrine. Accordingly, Defendants have not shown that Vanguard's breach of contract

allegations bar its tort claims as a matter of law at this stage in the litigation, so the Court will deny Defendants' motion on this point.

## CONCLUSION

For all the foregoing reasons, the Court **DENIES** Defendants' motion for judgment on the pleadings. [DE 50]

SO ORDERED.

ENTERED: August 13, 2018

                                                /s/ JON E. DEGUILIO
Judge
United States District Court