UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| NEUROLOGY AND PAIN MANAGEMENT ASSOCIATES, P.C., d/b/a VANGUARD ELDERCARE MEDICAL GROUP, | ) ) ) ) | |
| Plaintiff and Counter-Defendant, | ) ) | |
| v. | ) ) | CASE NO.: 3:17-CV-00035-JD |
| ANTHONY BUNIN and BIO-BEHAVIORAL CARE SOLUTIONS, LLC, | ) ) ) | |
| Defendants. | ) ) | |
| | | |
| BIO-BEHAVIORAL CARE SOLUTIONS, LLC, | ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| STEVEN POSAR, | ) ) | |
| Defendant. | ) ) | |

OPINION AND ORDER

While employed by Bio-Behavioral Care Solutions, LLC ("BCS"), Dr. Anthony Bunin became a consultant to BCS's competitor, Neurology and Pain Management Associates ("Vanguard"), and its CEO Dr. Steven Posar. Both companies serve mental health and senior living facilities in Indiana and Michigan, respectively. The relationships soured between the parties, culminating in this lawsuit. Vanguard claims that Dr. Bunin breached their contract and misappropriated its good will. In turn, Dr. Bunin and BCS filed counterclaims against Vanguard, and each party now moves for summary judgment. [DE 97, 98, 100].

# I.  FACTUAL BACKGROUND

Vanguard and BCS are competitor companies that manage and provide general services to various mental health and senior living facilities. Dr. Steven Posar is the principal owner of Vanguard and Robert Clemente is the principal owner of BCS. In January 2013, BCS entered into a Marketing Agreement ("Agreement") with Doctors Behavioral Hospital ("Doctors Hospital") in which BCS agreed to provide marketing and consulting services to Doctors Hospital. [DE 103]. Section Eight of the Marketing Agreement provided Restrictive Covenants where BCS agreed not to compete with Doctors Hospital in Indiana, and, in turn, Doctors Hospital, including any of its affiliates, agreed not to compete with BCS in Michigan.[1] As will be addressed later in this opinion, the parties disagree as to whether Vanguard is an affiliate of Doctors Hospital. The Agreement between the parties did not last long as it was terminated on October 20, 2014. [Exhibit D, Clemente Dep. 78:8-12].

In November 2012, Dr. Bunin, an employee of BCS, agreed to assist Dr. Posar and Vanguard by providing consulting services for Vanguard's facilities in Indiana. Dr. Bunin agreed to work as an independent contractor when providing consulting services to Vanguard. During the time he consulted for Vanguard, Dr. Bunin continued to be employed by BCS. In 2014, Dr. Posar started requesting that Dr. Bunin arrange meetings for Vanguard with representatives of healthcare facilities in Michigan that were under contract with BCS. Dr. Bunin refused to arrange these meetings because of his contract with BCS and because he believed Vanguard as Doctor Hospital's affiliate was precluded by the Marketing Agreement from operating in Michigan. On July 9, 2015, Vanguard terminated Dr. Bunin's work as an independent contractor. [DE 99-10].

---

[1] Section 8.2 states, "Hospital or any affiliate of Physicians Hospital System shall not enter into any agreement, oral or written, directly or indirectly, with any Facility within the Michigan Service Area under an active on-site mental health service contract with BCS to provide remote or on-site clinical services at the Facility which is the same or similar to the mental health services generally rendered by BCS or its affiliates."

Vanguard filed this suit against both Dr. Bunin and BCS in 2016. In its complaint, Vanguard maintains that it hired Dr. Bunin as an independent contractor to provide program and business development for Vanguard starting in 2012. [DE 39 at 1]. Vanguard argues that it agreed to a Memorandum of Understanding ("MOU") with Dr. Bunin, and the express intent of the MOU was for Dr. Bunin to work as an independent contractor for Vanguard at designated residential senior facilities and in-patient hospitals. Vanguard claims that while employed by Vanguard, Dr. Bunin "was surreptitiously working for and acting as an executive officer for BCS, one of Vanguard's direct competitors, all the while informing Vanguard and its principal that Bunin's relationship with BCS had terminated." [*Id*. at 2.] Further, Vanguard alleges that Dr. Bunin solicited customers on behalf of BCS and "usurped important business opportunities from Vanguard to directly compete against Vanguard," which harmed Vanguard's business relationships. [*Id*.] Vanguard also alleges that BCS was aware of Dr. Bunin's activities and, therefore, is vicariously liable for Dr. Bunin's actions. [DE 39].

In its counterclaim, BCS asserts that Dr. Posar fully participated in negotiating the Marketing Agreement between BCS and Doctors Hospital, including making statements and representations to lead BCS into entering the Agreement but without any intention of complying with the requirements of the Agreement. [DE 85 at 5]. Moreover, BCS argues that it never would have entered into the Agreement unless both Dr. Posar and Vanguard agreed to be bound by Section 8.2 of the Agreement. With the goal of providing services in Michigan, Vanguard asked Dr. Bunin to help arrange meetings with principals of nursing homes and facilities there even while knowing such activity violated Section 8.2 of the Agreement. BCS also alleges that Dr. Posar had access to BCS's confidential information regarding the identities of nursing homes and

facilities under contract with BCS in Michigan and used that information to hire BCS clinicians and used BCS promotional materials in Vanguard's attempt to move into Michigan. [*Id*. at 8].

## II. STANDARD OF REVIEW

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of [a] genuine issue of material fact." *Id.* at 323. Once the moving party meets this burden, the nonmoving party may not rest on allegations or denials in its own pleading but must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). The disputed facts must be *material*, which means that they "might affect the outcome of the suit under the governing law." *Brown v. City of Lafayette*, No. 4:08-CV-69, 2010 WL 1570805, at *2 (N.D. Ind. Apr. 16, 2010). As a federal court sitting in diversity, the Court will rely on state substantive law. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.,* 165 F.3d 1087, 1090 (7th Cir. 1999). And relevant to many claims addressed in this opinion, "[i]f the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment

must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996). Finally, in a case involving cross-motions for summary judgment, that means that each party receives the benefit of all reasonable inferences when considering the opposing party's motion. *Tegtmeier v. Midwest Operating Eng'rs Pension Tr. Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004).

## III. DISCUSSION

Dr. Bunin and BCS each moved for summary judgment based on Vanguard's complaint. [DE 97, 98]. Vanguard filed the same response to both motions [DE 105]; therefore, the Court will address their motions in the first section before addressing Vanguard's motion for summary judgment against BCS and Dr. Bunin in the second section. [DE 100].

### A. Dr. Bunin's and BCS's Motions for Summary Judgment

Regarding the allegations in Vanguard's complaint, there is no question that Dr. Bunin was a consultant for Vanguard for several years and was paid by Vanguard during this time period. The parties disagree as to whether their relationship was based in contract and, if so, whether Dr. Bunin breached the contract. Furthermore, even if Dr. Bunin can show there was no contract between the parties, questions remain as to whether Dr. Bunin defrauded Vanguard, violated a fiduciary duty owed to Vanguard, or whether Dr. Bunin tortuously interfered with Vanguard's business relationships or engaged in unfair competition. For several of these claims, Vanguard also asserts that BCS is vicariously responsible for Dr. Bunin's actions. The Court will now address each of these questions.

#### 1. *Count I: Breach of Contract Claim Asserted against Dr. Bunin*

First, Vanguard asserts a claim against Dr. Bunin for breach of contract based on a Memorandum of Understanding they agreed upon. [DE 99-7]. Vanguard asserts that the intent of

the MOU was for Dr. Bunin to work for Vanguard as an independent contractor and that he breached the MOU by secretly working for BCS while he was supposed to be providing services to Vanguard. [DE 39 at 7]. Vanguard also alleges that Dr. Bunin was soliciting its customers and potential customers on behalf of BCS, interfering with Vanguard's business relationships, and committing other acts that were prohibited by the MOU's non-compete clause.

In moving for summary judgment, Dr. Bunin argues that Vanguard cannot assert breach of contract because it cannot show that the MOU constitutes a contract, as it is unsigned and lacks material terms. [DE 99 at 8]. And even if the Court were to find the MOU a valid contract, Dr. Bunin argues it cannot be enforced due to the lack of material terms. Finally, Dr. Bunin argues the MOU is not enforceable as it is an agreement to agree. In response, Vanguard argues that by asserting a counterclaim for breach of contract,[2] Dr. Bunin has judicially admitted the existence of a contract. Vanguard also notes that while the MOU is unsigned, Dr. Bunin's conduct establishes his assent to the terms of the MOU. Vanguard argues that the MOU sets forth the essential terms of the parties' agreement with reasonable certainty. Finally, Vanguard asserts that while the MOU references future negotiations and another agreement, the parties clearly express an intent to be bound by the MOU until such time that another agreement is reached, if at all. In response, Dr. Bunin argues that his counterclaim for breach of contract is not a judicial admission: it "is simply an alternative, that if the court determined that a valid contract existed, that Vanguard breached it first by failing to pay [him] for work performed." [DE 110 at 2]. Moreover, Dr. Bunin goes on to state that he "fully expects that if the Court finds no contract

---

[2] In his counterclaim, Dr. Bunin asserts that he and Vanguard entered into an agreement in which he agreed to provide consulting services to Vanguard in exchange for payment. Dr. Bunin claims that he has satisfied all his obligations under the agreement, but Vanguard has failed to pay him as agreed, which constitutes a breach of the parties' agreement. [DE 10 at 8].

exists between Vanguard and [him], that [his] counterclaim will be disposed of as well on summary judgment." [*Id.*].

The Court first addresses whether Dr. Bunin's counterclaim for breach of contract results in a judicial admission that a contract existed with Vanguard. [DE 105 at 8]. Vanguard argues that, since Dr. Bunin has judicially admitted the existence of a contract, his motion for summary judgment on Vanguard's claim for breach of contract should be denied. In Dr. Bunin's Answer and Counterclaim, he denies the allegations contained in Count I (Breach of Contract) [DE 10 at 3-4] while later asserting the counterclaim for breach of contract [DE 10 at 8]. "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). It is well-recognized under Federal Rule of Civil Procedure 8(d)(2) that parties may plead in the alternative regardless of consistency. Fed. R. Civ. P. 8. "When this is done, an admission in one alternative in the pleadings in the case does not nullify a denial in another alternative as a matter of pleading." 6 Handbook of Fed. Evid. § 801:26 (9th ed.); *see also*, *Cont'l Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971), *Douglas Equip., Inc. v. Mack Trucks, Inc.*, 471 F.2d 222, 224 (7th Cir. 1972). Indiana courts have also found that, where an admission is countered by other pleadings (as is the case here), the "ambiguity need not be construed against the pleader." *Butler v. Forker*, 221 N.E.2d 570, 575 (Ind. Ct. App. 1966). Regardless, the Court finds Dr. Bunin's counterclaim to be a pleading in the alternative and not a judicial admission of the existence of a contract.

Next, the Court will address whether the MOU may be considered a valid contract. The existence of a contract is established by evidence of an offer, acceptance, consideration, and a manifestation of mutual assent. *Ind. Dep't of Corr. v. Swanson Servs. Corp.*, 820 N.E.2d 733,

7

737 (Ind. Ct. App. 2005). "To bring a contract into existence, an offer must be extended and the offeree must accept it, the communication of acceptance being crucial. Thus, a meeting of the minds between the contracting parties is essential to the formation of a contract." *Id.* And, in order to be enforceable, a contract must be reasonably definite and certain in its material terms so that the intention of the parties may be ascertained. *Berkel & Co. Contractors v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 655 (Ind. Ct. App. 2004). Notably, Indiana courts have routinely made clear that "the validity of a contract is not dependent upon the signature of the parties." *Ind. BMV v. Ash, Inc.*, 895 N.E.2d 359, 366 (Ind. Ct. App. 2008); *State v. Daily Express, Inc.*, 465 N.E.2d 764, 767 (Ind. Ct. App. 1984). Nonetheless, when an agreement is not signed, Indiana law requires "some form of assent to the terms." *Nationwide Ins. Co. v. Heck*, 873 N.E.2d 190, 196 (Ind. Ct. App. 2007). "Assent may be expressed by acts which manifest acceptance." *Id.; see also, Pohl v. United Airlines, Inc.*, 110 F. Supp. 2d 829, 836 (S.D. Ind. 1999) ("As long as there is evidence to show that a meeting of the minds has occurred, a signed document is not the *sine qua non* to the creation of a binding contract."), *aff'd*, 213 F.3d 336 (7th Cir. 2000).

First, recognizing that only essential terms need to be included to render a contract enforceable, the Court turns to the contract to analyze which terms are present and which are missing. *Wolvos v. Meyer*, 668 N.E.2d 671, 676 (Ind. 1996). In the MOU, the parties are clearly identified: Anthony E. Bunin and Steven Posar. Second, the subject matter of the MOU is clearly set forth: Dr. Bunin will provide program and business development to existing Vanguard facilities in the service area. Third, the MOU explains the roles and expectations of each party in their collaboration in Subsections 2D and 2E. But, as noted by Dr. Bunin, the MOU also lacks many terms including: the date the MOU was entered, the place of business where Dr. Bunin was to work, the amount of fees to be paid to Dr. Bunin, and the equity share that Steven Posar

agreed to pay Dr. Bunin. And, "the existence or nonexistence of a contract turns on whether material terms are missing." *Mays v. Trump Indiana, Inc.*, 255 F.3d 351, 358 (7th Cir. 2001). The MOU also notably lacks signatures by either party though the Court recognizes that Indiana courts have routinely made clear that "the validity of a contract is not dependent upon the signature of the parties." *Ind. BMV v. Ash, Inc.*, 895 N.E.2d 359, 366 (Ind. Ct. App. 2008).

The Court concludes that the material terms of the MOU are not reasonably definite and certain so that the intention of the parties may be ascertained. The MOU lacks the payment structure agreed upon by the doctors, it lacks an effective date providing the Court with no relevant time period on which to determine the parties' relevant actions, and it lacks the facilities where performance of the contract was to occur. The Court recognizes there to be some form of a consulting relationship between Vanguard and Dr. Bunin but there is no evidence regarding the terms of that relationship. As the Court noted in its previous order [DE 63], Vanguard could have provided evidence that the MOU was signed at some point, that there were other documents or memorializations of the agreement in existence, or that Dr. Bunin accepted the agreement through his conduct. *Id*. at 6. But Vanguard has failed to supply any evidence that the MOU was an enforceable contract. Dr. Bunin testified in his deposition that "I never had a document that was signed with them, but Steve [Posar] was paying some consultation fees to me" to help Vanguard's facilities in Indiana. [Exhibit E, Bunin Dep. 26:7-22]. Dr. Posar testified that he does not possess a written contract signed by him and Dr. Bunin. He argues that there *was* a signed contract with the material term blanks filled in but that he cannot find it and thus cannot produce it. [Exhibit B, Posar Dep. 28:11 to 29:20].

Vanguard and Dr. Posar also fail to provide evidence of Dr. Bunin's assent to the terms of a contract or evidence of the parties discussing the terms or timeframe of a contract. Vanguard

argues that Dr. Bunin's testimony in his deposition established his assent to the terms of the

MOU although, notably, Vanguard failed to provide any citation to which parts of the deposition

supported its argument. [DE 105 at 9]. In his deposition, Vanguard's attorney asks Dr. Bunin a

series of questions about what kind of services he performed for Vanguard and Dr. Bunin

answers in the affirmative. [Exhibit E, Bunin Dep. 33-36]. During this exchange, Vanguard's

attorney does not cite to the MOU as the source from which he is reading the described services

though many are included in the section describing Dr. Bunin's duties under the MOU. [DE 99-7

at 2-3]. Later in his deposition when *specifically* discussing the MOU, Dr. Bunin testifies to the

following:

> "There's many things in there that – that were at a granular level that I never
> discussed with Steve. We had discussed more general aspects that he had brought
> up in terms of, oh, 10, 15 percent equity stake. We'll work out some monthly fee.
> . . . But it was very general terms and not to the granular level that is presented in
> that document, which is what surprised me. And there was blanks everywhere.
> Never filled in."

 [Exhibit E, Bunin Dep. 106-107]. Dr. Bunin does not deny that he had a consultative

relationship with Vanguard as an independent contractor but asserts that the MOU does not

reflect the agreement he made with Dr. Posar.

Courts cannot make contracts for parties, nor are they "at liberty to supply omitted terms

while professing to construe a contract." *Zukerman v. Montgomery*, 945 N.E.2d 813, 822 (Ind.

Ct. App. 2011) (citing *Mead Johnson v. Oppenheimer,* 458 N.E.2d 668, 670 (Ind. App. Ct.

1984)). "[W]here any essential term is omitted from a contract, or is left obscure or undefined, so

as to leave the intention of the parties uncertain as to any substantial term of the contract, the

contract may not be specifically enforced." *Poore v. Indianapolis Pub. Sch.*, 155 N.E.3d 643,

655 (Ind. Ct. App. 2020) (quoting *Conwell v. Gray Loon Outdoor Mkg. Grp., Inc.*, 906 N.E.2d

805, 813 (Ind. 2009)). There are too many material terms missing in the MOU for the Court to

find it enforceable and notably Vanguard is not properly identified in it. Dr. Bunin freely admits that he had an independent contractor relationship with Vanguard and Dr. Posar, but he also testified that he had never seen the MOU before the start of this lawsuit. Furthermore, the Court does not find that Dr. Bunin assented to the terms of the MOU simply by completing services the parties agreed to as part of the independent contracting role created for him. And Vanguard has failed to supply any evidence demonstrating the contrary. Moreover, the Court notes that there are also a couple of other inconsistencies within the MOU itself.  It refers to "Vanguard Services," which Dr. Posar explained in his deposition is not an entity he is aware of as his entity is known as "Vanguard Eldercare." [Exhibit B, Posar Dep. 27:1-10]. The MOU also calls for Dr. Bunin to "collaborate in the Indiana market at [Steven Posar's] existing facilities," but as this dispute has demonstrated, Dr. Posar wanted Dr. Bunin to work in Michigan and not just Indiana. [DE 99-7].

It is clear that Dr. Bunin had some kind of an agreement as an independent contractor with Vanguard, but the MOU supplied by Vanguard is insufficient to form the basis of an enforceable contract on which this Court can find a breach of contract claim. Therefore, the Court grants Dr. Bunin summary judgment on the breach of contract claim. Moreover, since Dr. Bunin's counterclaim against Vanguard is premised on the existence of a written contract, Dr. Bunin's counterclaim will also be dismissed.

### 2.   *Count II: Constructive Fraud Claim Asserted against Dr. Bunin and BCS*

Next, in its complaint, Vanguard alleged that, as an independent contractor and as part of his obligations under the MOU,[3] Dr. Bunin owed a duty of good faith and fair dealing to

---

[3] Vanguard refers to the MOU as the "Agreement" throughout its complaint. [DE 39]. For the purposes of this opinion, the Court recognizes the MOU as the alleged agreement between Dr. Bunin and Vanguard and recognizes the Marketing Agreement ("Agreement") as the agreement between BCS and Doctors Hospital.

Vanguard in all aspects regarding their arrangement. But in its response brief, Vanguard argued that the requisite duty to support a claim for constructive fraud was supplied by the fiduciary duty Dr. Bunin owed Vanguard. [DE 105 at 17]. Vanguard also argued that, since Dr. Bunin worked on behalf of BCS for its benefit, BCS is responsible for his actions as it is vicariously liable under the theory of respondeat superior for Dr. Bunin's actions. [DE 105 at 18].

Under Indiana law, a showing of constructive fraud requires "the existence of a duty by virtue of a special relationship between the parties; deceptive and material representations or omissions made in violation of that duty; and reliance on the deceptive statements or omissions resulting in injury to the complaining party and an unconscionable advantage to the defrauding party." *Mudd v. Ford Motor Co.*, 178 F. App'x 545, 547 (7th Cir. 2006) (citing *Doe v. Howe Military Sch.,* 227 F.3d 981, 991 (7th Cir. 2000)). Normally the "special relationship" is a fiduciary or confidential one between the parties. *Doe,* 227 F.3d at 991. Vanguard initially based this claim on the MOU it allegedly had with Dr. Bunin. But an arms-length, contractual relationship is not enough to give rise to a claim of constructive fraud. *See Morgan Asset Holding Corp. v. CoBank, ACB,* 736 N.E.2d 1268, 1273 (Ind. 2000); *Comfax Corp. v. North Am. Van Lines,* 587 N.E.2d 118, 126 (Ind. Ct. App. 1992) ("pure contractual relations between parties entering into an arm's length transaction may not form the basis for constructive fraud"); *see also Orem v. Ivy Tech State College,* 711 N.E.2d 864, 869 (Ind. Ct. App. 1999) ("There must always be a violation of some duty owing to plaintiff, and generally such duty must arise by operation of law and not by mere agreement of the parties."). Next, Vanguard argued that the duty element required for its constructive fraud claim was supplied by Dr. Bunin's fiduciary duty to Vanguard, but as will be more fully explained in Count III (Breach of Fiduciary Duty), this Court finds that Dr. Bunin owed no fiduciary duty to Vanguard.

12

Thus, Vanguard's argument for a special relationship between the parties must rely on Dr. Bunin owing Vanguard a duty of good faith and fair dealing as it originally alleged in its complaint. Indiana courts recognize that a fiduciary relationship is not the only basis for a claim of constructive fraud; rather, a relationship that invokes a duty of good faith and fair dealing is also sufficient to satisfy the first prong of the constructive fraud test. *Wells v. Stone City Bank,* 691 N.E.2d 1246, 1251 (Ind. Ct. App. 1998). But, "Indiana law does not impose a generalized duty of good faith and fair dealing on every contract; the recognition of an implied covenant is generally limited to employment contracts and insurance contracts." *Old Nat. Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015). Here, the Court finds there to be no employment contract and Vanguard makes no other argument as to how a duty of good faith and fair dealing might be applied to its relationship with Dr. Bunin. Notably, in its argument regarding whether a fiduciary relationship exists between the parties, Vanguard submits that the conduct of the parties over a period of years established a relationship that was characterized by trust and confidence. While that may have been true, Indiana law does not extend the duty of good faith and fair dealing to such a relationship and Vanguard has failed to supply any other evidence demonstrating that a special relationship, a required element of its constructive fraud claim, existed between it and Dr. Bunin. Therefore, the Court grants Dr. Bunin summary judgment on the constructive fraud claim.

As for the claim asserted against BCS, the Court cannot find there to be any genuine issue of material fact as to its involvement with Dr. Bunin. Vanguard responded to BCS's motion for summary judgment on this claim that its constructive fraud claim was based entirely on Dr. Bunin's relationship with Vanguard. [DE 105 at 18]. Vanguard then argues that since Dr. Bunin was still employed by BCS while doing contract work for it, that BCS is vicariously liable under

13

the theory of respondeat superior. [*Id.*]. Notably though, Mr. Clemente, the CEO of BCS, testified that he was unaware that Dr. Bunin was working for Vanguard during the relevant time period. [Exhibit D, Clemente Dep. 19:5-25]. Nor has Vanguard supplied any evidence to any kind of involvement by BCS while Dr. Bunin worked with Vanguard. Its claim that BCS's liability falls under the doctrine of respondeat superior fails primarily because Dr. Bunin is not liable, but also because Vanguard has not supplied any evidence that Dr. Bunin's actions were committed within the course and scope of his employment with BCS. "An employee's act is *not* within the scope of employment when it occurs within *an independent course of conduct* not intended by the employee *to serve any purpose of the employer.*" *Barnett v. Clark*, 889 N.E.2d 281, 284 (Ind. 2008) (quoting Restatement (Third) of Agency, § 7.07(1) (2006)).

Here, Dr. Bunin freely admitted that he had an independent contractor relationship with Vanguard. [Exhibit E, Bunin Dep. 26:7-22]. Moreover, as noted earlier, Mr. Clemente was unaware that Dr. Bunin was working for Vanguard prior to the commencement of this lawsuit. [Exhibit D, Clemente Dep. 19:5-12]. Finally, Vanguard has failed to supply any evidence that Dr. Bunin was working within the scope of his employment with BCS or that he was being directed by BCS to the detriment of Vanguard. "While the record 'and all reasonable inferences drawn from it [are to be viewed] in the light most favorable to the party opposing the motion,' *Bisciglia v. Kenosha Unified Sch. Dist. No. 1,* 45 F.3d 223, 226 (7th Cir. 1995), the nonmovant must show more than 'some metaphysical doubt' regarding the facts." *Technic Eng'g, Ltd. v. Basic Envirotech, Inc.*, 53 F. Supp. 2d 1007, 1010 (N.D. Ill. 1999). Vanguard has failed to support its claim of vicarious liability for constructive fraud against BCS and therefore the Court grants BCS's motion for summary judgment as to that claim.

14

### 3.   *Count III: Breach of Fiduciary Duty Claim Asserted against Dr. Bunin*

Vanguard argues that, as an independent contractor and as part of his obligations under the MOU, Dr. Bunin owed it a fiduciary duty to deal fairly, honestly, and openly in all aspects of their cooperative agreement. [DE 39 at 10]. In the complaint, Vanguard alleges that Dr. Bunin breached his fiduciary duty by engaging in the same or substantially the same services on behalf of BCS that he was supposedly providing for Vanguard. Vanguard also alleges that Dr. Bunin breached this duty by being employed by one of its competitors, serving as an executive officer at the same competitor while receiving compensation from Vanguard, and for attempting to solicit business with Vanguard's customers, clients, and contacts on behalf of BCS. Finally, Vanguard asserts that Dr. Bunin further breached his duty by providing Dr. Posar false reports of his activities on behalf of Vanguard.

"[A] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of that duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Rapkin Grp., Inc. v. Cardinal Ventures, Inc.*, 29 N.E.3d 752, 757 (Ind. Ct. App. 2015) (internal citation omitted); *Aaron MacGregor & Assocs., LLC v. Zhejiang Jinfei Kaida Wheels Co.*, 328 F. Supp. 3d 906, 927 (N.D. Ind. 2018). Indiana courts have not found a fiduciary duty to be based on employment or contractual agreements, "[b]ut . . . under Indiana law, a breach of contract and breach of fiduciary duty are two different claims; a contractual relationship does not preclude a fiduciary one." *Zimmer Inc. v. Beamalloy Reconstructive Med. Prod., LLC*, 2017 WL 3315135, at *5 (N.D. Ind. Aug. 2, 2017) (citing *Town of Goodland v. Kessler Tank Co.*, 2014 WL 1319509, at *1–2 (N.D. Ind. April 1, 2014) ("the existence of a fiduciary relationship depends upon the facts of each case, not on the label or classification")); *see also*, *Demming v. Underwood*, 943 N.E.2d 878, 888 (Ind. Ct. App. 2012).

15

Indiana courts have also found that a fiduciary duty can arise out of a confidential relation between parties under special circumstances. *Town of Goodland*, 2014 WL 1319509, at *1–2 ("The only relevant exception [to the general rule that a contractual relationship does not give rise to a fiduciary relationship] is when special circumstances establish a 'confidential relationship' between the parties.") (citing *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1046–47 (Ind. Ct. App. 2003)). Three elements are required to establish this confidential relationship between parties:

> "First, the claimant must establish that there was 'an unequal relationship between two parties, with one party in a position of dependence, weakness or lack of knowledge.' *Id.* (citing *Kreighbaum v. First National Bank & Tr.*, 776 N.E.2d 413, 419 (Ind. Ct. App. 2002)). Second, the weaker party must have put its trust and confidence in the stronger party. *Id.* Third, 'the stronger party [must have] wrongfully abused the weaker party's trust and confidence by improperly influencing the weaker party to gain an advantage.' *Id.* (citing *Kreighbaum*, 776 N.E.2d at 419). In order to prove improper influence to gain an advantage, the plaintiff 'has to plead facts showing [the tortfeaser] took advantage of [the claimant's] trust.' *Id.* (citing *Kreighbaum*, 776 N.E.2d at 419)."

*Zimmer Inc.*, 2017 WL 3315135, at *5.

But here, there is simply not enough to establish a fiduciary relationship between Vanguard and Dr. Bunin. Dr. Bunin's fiduciary duty cannot be based on a contract and the facts do not establish a confidential relationship based on an unequal relationship between the parties. Vanguard does not allege that Dr. Bunin was the more dominant party or that he had more influence between the two. Neither Vanguard, nor Dr. Posar can argue that they are the more inexperienced party when compared to Dr. Bunin since the facts establish that BCS and Vanguard were competitors. And Vanguard fails to demonstrate how Dr. Bunin was superior to it or exercised influence over it. *Paulson v. Centier Bank*, 704 N.E.2d 482, 490 (Ind. Ct. App. 1998). While Vanguard certainly had to trust that Dr. Bunin was doing what he said he was doing, trust is simply not enough to establish a fiduciary duty. *Town of Goodland v. Kessler Tank*

*Co.*, 2014 WL 1319509, at *3 (N.D. Ind. Apr. 1, 2014). "[W]e trust most people with whom we do business." *Pommier v. Peoples Bank Marycrest,* 967 F.2d 1115, 1117 (7th Cir. 1992). To state a claim for breach of fiduciary duty, the dominant party must have used his dominance to somehow improperly influence the weak party to obtain an advantage. *See Kruse v. Nat'l Bank of Indianapolis,* 815 N.E.2d 137, 148 (Ind. Ct. App. 2004). And notably, Dr. Posar testified that he was aware Dr. Bunin was working for BCS for the entire time up until an executive for BCS, Dr. Gunabalan, was arrested. [Exhibit B, Posar Dep. 75:9-12]. Thus, at the very most, Vanguard has alleged bad faith behavior on Dr. Bunin's part for not being forthright about resigning from BCS, but neither his alleged behavior nor their relationship gives rise to a fiduciary duty. *See Zimmer Inc.*, 2017 WL 3315135, at *6 (N.D. Ind. Aug. 2, 2017). Since Vanguard has failed to provide evidence demonstrating the existence of a fiduciary duty Dr. Bunin owed it, Dr. Bunin is entitled to summary judgment as a matter of law on the claim for breach of fiduciary duty.

### 4. *Count IV: Fraud Claim Asserted against Dr. Bunin*

Vanguard is also asserting a claim of actual fraud against Dr. Bunin for knowingly, or with reckless disregard for the truth, making false statements of material fact. Vanguard alleges that Dr. Bunin made these false statements with the intent to deceive Vanguard so that he would continue to be compensated while intentionally harming and devaluing Vanguard. Vanguard argues that it was justified in relying on Dr. Bunin's statements and did so to its detriment while Dr. Bunin diverted business away to BCS, attempted to solicit business from Vanguard's customers, and acted as an executive officer for BCS while receiving compensation from Vanguard. Therefore, as a result of his fraudulent conduct, Vanguard alleges that Dr. Bunin has been unjustly enriched through compensation from Vanguard for services that were not rendered and, at the same time, increasing the value of BCS and harming Vanguard.

17

In Indiana, the elements of actual fraud are: 1) a material misrepresentation of past or existing fact by the party to be charged that "2) was false; 3) was made with knowledge or in reckless ignorance of the falsity; 4) was relied upon by the complaining party; and 5) proximately caused the complaining party injury." *Schwartz v. Oberweis*, 826 F. Supp. 280, 288 (N.D. Ind. 1993). For actual fraud to apply, "the complaining party must have had the right to rely upon those misrepresentations." *Pugh's IGA, Inc. v. Super Food Servs., Inc.*, 531 N.E.2d 1194, 1198 (Ind. Ct. App. 1988).

Dr. Bunin argues that both Vanguard and Dr. Posar knew he was still employed by BCS, that Vanguard admitted there was no evidence that he and BCS engaged in a conspiracy, and that Vanguard cannot prove it suffered an injury. [DE 99 at 19]. In his deposition, Dr. Posar testified that he was aware Dr. Bunin was working for BCS for the entire time up until an executive for BCS, Dr. Gunabalan, was arrested. [Exhibit B, Posar Dep. 75:9-12]. Following the arrest, Dr. Posar stated that both he and Cameron Gilbert met with Dr. Bunin about not wanting Vanguard to be associated with an organization (BCS) that had one of its executives under federal arrest. Dr. Posar testified that they communicated with Dr. Bunin that Vanguard could not have a relationship with him if he was still associated with BCS and that "[y]ou have to either go with BCS or go with us, but you can't really do both at this point." [*Id*. at 76:6-8]. Following this conversation, Dr. Posar testified that Dr. Bunin prepared a resignation letter and certified to Dr. Posar that he had mailed the letter and that his relationship with BCS was terminating within 60 days. [*Id*. at 76:13-17]. Finally, Dr. Posar testified that "at that point going forward, it was our belief and it was Mr. Bunin's representation to us that he no longer had a relationship with BCS." [*Id*. at 76:19-21]. In Dr. Bunin's deposition, he explains the series of events slightly differently. Dr. Bunin testified that, "[n]o, I did not at any point tell him I was no longer

18

employed by BCS." [Exhibit E, Bunin Dep. 59:21-22]. He further explained that following Dr.

Gunabalan's arrest, Dr. Posar encouraged him to resign from BCS to protect himself and so he

prepared the resignation letter at Dr. Posar's direction, but never submitted the letter. *Id*. at 60:1-

23. Dr. Bunin testified that when asked if he sent the letter, he told Dr. Posar that he was

consulting with counsel and that he had still not decided what to do. [*Id*. at 63:16-19].

"[A]ctual fraud may not be based on representations regarding future conduct, or on

broken promises, unfulfilled predictions, or statements of existing intent which are not

executed." *Comfax v. N. Am. Van Lines*, 587 N.E.2d 118, 125 (Ind. App. Ct. 1992). The

representation at issue here is whether Dr. Bunin allowed Vanguard to believe that he had

resigned from BCS when he had not. Dr. Bunin asserts that he promised to look into resigning

from BCS and to speak to his attorney about it but testified that he never stated that he fully

resigned from BCS. On the other hand, Dr. Posar asserts that Vanguard had several

conversations with Dr. Bunin about his employment with BCS and that Dr. Bunin represented

that he was no longer employed there. The parties did not provide any evidence on this issue

aside from the depositions. Thus, there may have been a period of time in which Vanguard

assumed Dr. Bunin was no longer working for BCS because Dr. Bunin led them to believe he

had resigned, but in reality, he had not. The claim cannot be based on Dr. Bunin's promise to

resign, it must be based on an existing fact—that he had resigned and was no longer employed

by BCS. *See Siegel v. Williams,* 818 N.E.2d 510, 515 (Ind. Ct. App. 2004). During this period of

time then, Dr. Bunin may have been working for Vanguard and being paid by Vanguard when, in

reality, he was really working for BCS and not helping Vanguard grow its business. Here, the

Court finds significant issues of material fact remain on this point, at least for the period of time

following the creation of Dr. Bunin's resignation letter and the termination of his independent

contract by Vanguard. Therefore, the Court denies Dr. Bunin's motion for summary judgment as to this claim.

### 5. *Count V: Tortious Interference Claim Asserted against Dr. Bunin and BCS*

In its response brief, Vanguard argues that Dr. Bunin intentionally interfered with Vanguard's relationships with facilities in Michigan by telling Vanguard that he was pursuing those business opportunities and promoting Vanguard when he was only marketing BCS in Michigan. [DE 105 at 21]. Vanguard claims that the evidence demonstrates that it suffered damages as a result of delayed entry and loss of new business in the Michigan market. [*Id.* at 22]. Vanguard argues that Dr. Bunin lied, verbally and in writing, about services he was performing on behalf of Vanguard. [*Id.* at 23]. Finally, Vanguard asserted that BCS is vicariously liable for Dr. Bunin's actions. And as a result of their actions, Vanguard asserts that the defendants have tortiously and without privilege interfered in Vanguard's business and prospective business.[4]

Dr. Bunin argues that Vanguard failed to establish the required element of damages for its tortious interference claim. [DE 99 at 21]. The Court agrees that Vanguard failed to demonstrate any harm. To establish tortious interference with a business relationship a party must show: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship." *McCollough v. Noblesville Sch.*, 63 N.E.3d 334, 344 (Ind. Ct. App. 2016). Moreover, "[i]n the State of Indiana, an element necessary to prove this cause of

---

[4] The Court notes that neither Dr. Bunin, nor BCS raised a statute of limitations argument for these claims and thereby has waived this affirmative defense. *See Neterer v. Slabaugh*, 548 N.E.2d 832, 834 (Ind. Ct. App. 1990).

action is that a defendant acted illegally in achieving his end." *Watson Rural Water Co. v. Indiana Cities Water Corp.*, 540 N.E.2d 131, 139 (Ind. Ct. App. 1989).

Here, Vanguard has failed to supply any evidence that damages resulted from Dr. Bunin's interference. Vanguard alleges that Dr. Bunin interfered with its current and prospective customers, but Dr. Posar testified in his deposition that he was not alleging that Dr. Bunin drove away any *current* customers. [Exhibit B, Posar Dep. 164:23-25 to 165:1-2]. Moreover, the only evidence Dr. Posar provided of Dr. Bunin's interference with Vanguard's prospective business customers in Michigan was the conversations he had with staff members at a potential customer facility and his conversation with one of the facility's employees, Jamie Garcia. [Exhibit B, Posar Dep. 165:21-25 and 166:1]. Dr. Posar stated that Jamie Garcia informed him that Dr. Bunin was soliciting her company's business on behalf of BCS while he was working for Vanguard. [Exhibit B, Posar Dep. 159:6-9]. Notably, Vanguard did not file any affidavit or declaration on behalf of Ms. Garcia stating these same facts. Dr. Posar also testified that Dr. Bunin blocked Vanguard in Michigan by representing BCS to certain facilities instead of Vanguard. [*Id.* at 169:17-25]. Moreover, Vanguard references a list of Michigan facilities that Dr. Bunin promised to get under contract for Vanguard, but fails to supply this list or references what facilities they lost as a result of Dr. Bunin's interference. [DE 105 at 21]. There is insufficient evidence demonstrating that, as a result of Dr. Bunin's interference, Vanguard lost prospective customers in Michigan or anywhere else. Vanguard has also not supplied any evidence of how much those potential new customers were worth to it. Certainly, if Dr. Bunin had been successful at interfering with any of Vanguard's business relationships, it could show how many potential facilities were lost to BCS or current facilities that switched from Vanguard to BCS. Once Vanguard had determined how many facilities were lost, it could estimate how

21

much each facility was worth in income. But it has failed to provide any evidence of such loss or damages.

Here, the nonmoving party, Vanguard, bears the burden of demonstrating that a genuine issue of material fact exists as to this claim. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of this Court "to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence." *See Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996). Vanguard has not supplied evidence to establish damages resulting from its allegations that Dr. Bunin wrongfully interfered with any of its current or potential clients or customers in the Michigan market. Therefore, the Court grants Dr. Bunin's motion for summary judgment on this claim.

In this same claim, Vanguard also asserts that BCS is vicariously liable for Bunin's actions because Dr. Bunin's actions were completed in the course and scope of his employment. Dr. Posar testified that he believed Dr. Bunin "was acting as an agent at that time essentially committing industrial espionage . . . on behalf of BCS." [Exhibit B, Posar Dep. 82:5-7]. But since Vanguard cannot prevail against Dr. Bunin, it follows that it cannot prevail against BCS. As noted several times in this opinion, Mr. Clemente, CEO of BCS, testified in his deposition that he was surprised to discover Dr. Bunin was working for Vanguard and that he learned about it from the lawsuit. [Exhibit D, Clemente Dep. 19:5-12]. Again, Vanguard has failed to supply sufficient evidence demonstrating tortious interference on the part of BCS. The claims asserted against Dr. Bunin failed and thus Vanguard's argument of respondeat superior fail. Moreover, as BCS argues, Vanguard has failed to show a valid relationship with any prospective customers in

22

Michigan and has admitted that it did not have any current customers that it lost as a result of Dr. Bunin's activities. Moreover, viewing the evidence in the light most favorable to Vanguard, there is no evidence that any contract between Vanguard and Dr. Bunin even existed or was broken, or that BCS induced the breaking of such a contract. Therefore, the Court grants BCS's motion for summary judgment as to both claims for tortious interference.

### 6.  *Count VI: Unfair Competition Claim Asserted against Dr. Bunin and BCS*

Vanguard's argument in response to the motions for summary judgment on its unfair competition claim is short. Vanguard argues that the evidence demonstrates that Dr. Bunin lied about the work he was performing for Vanguard. It argues that "[i]nstead of promoting Vanguard in Indiana and Michigan, Dr. Bunin accepted compensation from Vanguard in exchange for essentially nothing and utilized his time continuing to promote BCS to the detriment of Vanguard." [DE 105 at 24]. Finally, again, Vanguard asserts that since Dr. Bunin's conduct was within the course and scope of his employment with BCS that BCS is vicariously liable.

Under Indiana law, unfair competition is not a single course of conduct, but a general category of conduct which "is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values." *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 599 (Ind. 2001). "The question to be determined in every case is . . . whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business." *Inst. for Int'l Educ. of Students v. Qian Chen*, 380 F. Supp. 3d 801, 810 (S.D. Ind. 2019) (quoting *Hartzler v. Goshen Churn & Ladder Co.*, 104 N.E. 34, 37 (Ind. App. Ct. 1914)). In its response brief, Vanguard quotes the court in *Felsher* when describing unfair competition as "the attempt to create confusion concerning the unfair competitor's goods." 755 N.E.2d at 598. [DE 105 at 23]. Vanguard then reiterates that Dr. Bunin

lied about the work he was performing for it and lied about his continued employment with BCS, while accepting money from Vanguard and continuing to promote BCS to Vanguard's detriment. Thus, it appears that Vanguard is arguing that Dr. Bunin committed the tort of "passing off," which "is a species of unfair competition that emerged in the nineteenth century as a type of fraud." *Keaton & Keaton v. Keaton*, 842 N.E.2d 816, 818 (Ind. 2006). "Under this doctrine, liability is imposed for the intentional misrepresentation of goods or services as those of another." *Id*.

Notably, the only evidence the Court could find on this subject involves Jamie Garcia. In his termination letter to Dr. Bunin (which was not supplied by Vanguard), Dr. Posar accuses him of lying about a meeting he set up with Ms. Garcia for Vanguard—essentially that Dr. Bunin stated that the meeting was scheduled with Ms. Garcia as a representative of her facility, and it was not. [DE 99-10]. And as noted earlier in this opinion, Dr. Posar testified in his deposition that Ms. Garcia informed him that Dr. Bunin was soliciting her company's business on behalf of BCS while he was working for Vanguard. [Exhibit B, Posar Dep. 159:6-9]. Interestingly, later in his deposition, Dr. Posar states that Ms. Garcia worked at a facility that was under contract with BCS. [*Id*. at 171:8-24]. Finally, Dr. Posar testified that Dr. Bunin never solicited any business away from Vanguard on behalf of BCS in Indiana. [*Id*. at 169:2-5]. The issue of unfair competition then is focused on what Dr. Bunin did or did not do in Michigan. While the Court notes that there is not a lot of evidence of unfair business competition—that is whether a defendant, as a matter of fact, is by his conduct passing off his goods as the plaintiff's goods, or his business as the plaintiff's business—there at least remains a genuine issue of material fact as to whether Dr. Bunin lied about or misrepresented the work he was doing for Vanguard *in*

*Michigan*. Therefore, the Court denies Dr. Bunin's motion for summary judgment as to the claim of unfair business competition.

However, Vanguard has failed to show Dr. Bunin taking any of these actions within the course and scope of his employment with BCS and thereby fails to show how BCS is vicariously liable. Dr. Bunin testified in his deposition that he was hired to promote Vanguard in Indiana and that he performed services on behalf of Vanguard in Indiana. [Exhibit E, Bunin Dep. 34:4-7]. Vanguard failed to supply evidence of BCS's involvement other than also being a current employer of Dr. Bunin. Therefore, the Court grants Dr. Bunin and BCS's motions for summary judgment on this claim.

### B.  Vanguard's Motion for Summary Judgment

The Court will now address Vanguard's motion for summary judgment asserted against BCS's amended complaint and counterclaim. A central issue in the relationship between BCS and Vanguard is whether the Marketing Agreement between BCS and Doctors Hospital also applies to Vanguard. [DE 104-3]. Vanguard's motion for summary judgment is based on BCS's first amended complaint against Dr. Posar, individually, and its counterclaims against Vanguard filed in October of 2019. [DE 85]. At the outset, the Court would note that there is a genuine issue of material fact as to whether Dr. Posar may be held individually liable for any of the claims asserted by BCS. At this point in time, insofar as any claims survive against Vanguard, the same claims survive against Dr. Posar. The Court will now address Vanguard's motion for summary judgment. [DE 100].

#### 1.  *Count I: Breach of Contract*

In its amended counterclaim against Vanguard, BCS asserts that Vanguard, as an affiliate of Doctors Hospital—a point that Vanguard disputes—was bound by the Marketing Agreement

between Doctors Hospital and BCS yet breached that agreement by attempting to expand its business into Michigan.  BCS submits that in 2012 Dr. Posar, as principal of Vanguard, was "heavily involved in the negotiation of the Marketing Agreement eventually entered into between Doctors Hospital and BCS." [DE 85 at 9]. Since Dr. Posar was involved in the negotiation of the Agreement, BCS argues that he was aware of the restriction in Section 8.2 of each party to their respective services areas—Indiana and Michigan. The restriction in the Agreement precluded Doctors Hospital, *or any of its affiliates*, from providing services to any facility in the Michigan Service Area that had an active contract with BCS. *Id.* The issue thus really turns on whether Vanguard is, or was at the time of signing, an affiliate of Doctors Hospital or if it is in privity with Doctors Hospital since Dr. Posar admitted to attempting to expand into Michigan.[5]

Here, there are significant issues of material fact as to whether Vanguard was an affiliate of or in privity with a party to the Marketing Agreement. "The term privity describes the relationship between persons who are parties to an action and those who are not parties to an action but whose interests in the action are such that they may nevertheless be bound by the judgment in that action." *Weinreb v. Fannie Mae*, 993 N.E.2d 223, 230 (Ind. Ct. App. 2013). BCS has supplied enough evidence of Vanguard's interest to the action such that it might be bound by the contract. There is also conflicting evidence as to whether Vanguard was considered an affiliate of Doctors Hospital in the contract itself or as generally understood under the meaning of the word.[6] BCS has supplied sufficient evidence demonstrating there to be

---

[5] Dr. Posar testified in his deposition that there "was a change in circumstances" which led him to attempt to expand Vanguard's business into southwestern Michigan. [Exhibit B, Posar Dep. 168-170].

[6] While neither party raised the issue of the parol evidence rule, which prohibits courts from considering extrinsic evidence for the purpose of varying or adding to the terms of the contract (including parties), courts may consider parol evidence if it is being used to show fraud, intentional misrepresentation, or mistake. *See Krieg v. Hieber,* 802

significant disputed issues of material fact remaining on these points. BCS supplied an article in which Dr. Posar is interviewed regarding Doctors Hospital. [DE 104-6]. In the article, Vanguard is described as an affiliate with Doctors Hospital and it states that Dr. Posar is the president of medical staff at Doctors Hospital. BCS also supplied an email between Dr. Posar, Dr. Bunin, and Cameron Gilbert which included a copy of a Letter of Intent as to a draft Development Agreement between Doctors Hospital and BCS, which BCS states includes predecessor language to Section 8.2 of the final Agreement. [DE 104-5]. The draft Development Agreement lists Vanguard Eldercare as an affiliate of Doctors Hospital. [*Id*. at 2]. An email from Dr. Bunin to Dr. Posar references the draft agreement and asks him to sign off on the Letter of Intent so that a full contract between the organizations could be completed. [*Id*. at 7]. Finally, another exhibit demonstrates an email Dr. Posar received from his attorney, Michael McNally, which states the following: "In the copy I reviewed, the agreement restricts the Hospital, Vanguarg [sic], and their respective affiliates from providing . . . services at any 'Facility' in Michigan." [DE 104-9]. The Court also notes that the numerous depositions in this case tend to show that Dr. Posar was, at the very least, aware of and involved in the negotiations surrounding the creation of the Marketing Agreement. Thus, there remains a genuine issue of material fact as to whether Vanguard was bound by the terms of the Marketing Agreement. Therefore, the Court denies Vanguard's motion for summary judgment on this claim.

### 2. *Count II: Unjust Enrichment/Quantum Meruit*

BCS asserts that from 2012-2014 it provided services under the Marketing Agreement, which led it to refer many patients to Doctors Hospital and which made it unable to compete in Indiana. As a result of these referrals, BCS claims that Vanguard and Dr. Posar benefitted

---

N.E.2d 938, 944 (Ind. Ct. App. 2004). The Court will consider parol evidence in this matter as BCS has demonstrated that it will be used to show fraud or intentional misrepresentation.

financially as an affiliate of Doctors Hospital. [DE 85 at 11]. Using BCS's confidential information, Vanguard and Dr. Posar hired BCS clinicians, attempted to recruit BCS facilities, and used its promotional materials in advertising, all of which unjustly enriched Dr. Posar and Vanguard. BCS asserts that it is entitled to receive the substantial financial benefit that Vanguard and Dr. Posar received from services provided to facilities in Michigan in violation of the Marketing Agreement.

"Also referred to as quantum meruit or quasi-contract, unjust enrichment requires a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party." *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012). "To recover under an unjust enrichment claim, a plaintiff must generally show that he rendered a benefit to the defendant at the defendant's express or implied request, that the plaintiff expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust." *Id.* But notably, "[w]hen the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law such as unjust enrichment." *Zoeller v. E. Chi. Second Century, Inc.,* 904 N.E.2d 213, 221 (Ind. 2009).

Here, the Court finds that BCS failed to provide evidence demonstrating that it expected payment from Vanguard for its referrals in any form. Moreover, the benefit that BCS asserts it rendered to Vanguard is the non-compete section in the Agreement, but that agreement is directly addressed in its breach of contract claim. If the Court were ultimately to find that the Marketing Agreement does not apply to Vanguard, then Vanguard's solicitation of BCS's facilities in Michigan would still not qualify as unjust enrichment, even if Vanguard improperly used confidential business information. Moreover, BCS has not supplied any evidence demonstrating it expected payment in any other form from Vanguard within or outside of the

28

Agreement. Therefore, the Court grants Vanguard's motion for summary judgment as to this claim.

### 3. Counts III-V: Tortious Interference

Vanguard asserts that BCS's three counts based on tortious interference must be dismissed because they are time-barred under Indiana law. In Indiana, a tortious interference claim has a two-year statute of limitations. Ind. Code § 34–11–2–4. The statute of limitations begins to run when a cause of action accrues, which is when an injury causes damage, or some ascertainable damage has occurred. *Graves v. Kovacs*, 990 N.E.2d 972, 978 (Ind. Ct. App. 2013). "[T]ortious interference with contract claim accrues when the contract is breached" and "[s]imilarly, a tortious interference with prospective advantage accrues when the prospective advantage is interfered with." *C & E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 644 (Ind. Ct. App. 1999). And "the general purpose of statutes of limitations is to encourage the prompt presentation of claims and to spare the courts from litigation of stale claims." *Mercantile Nat'l Bank of Hammond v. Underwood,* 906 N.E.2d 881, 887 (Ind. Ct. App. 2009). Thus, these claims accrued when BCS became aware of the interference or damage that was caused by the interference.

In an effort to save these claims, BCS first argues that its counterclaims relate back to the filing of Vanguard's complaint in state court on September 26, 2016. Here, BCS's counterclaims against Vanguard do arise out of the same agreements and business relationships as Vanguard's complaint and therefore may be considered compulsory counterclaims. *See Bond v. Gen. Motors, LLC*, 2016 WL 3548956, at *2 (N.D. Ind. June 30, 2016) (citing Ind. Trial Rule 13(A)). But reading Indiana courts' application of statutes of limitations to affirmative counterclaims, it does

29

not appear that BCS's "relating back" argument has any legs.[7] Indiana courts have previously

addressed the accrual date of counterclaims and strictly apply the statute of limitations, which

results in the counterclaims accruing on the same date as the plaintiff's claim—the date of the

incident or injury. *See Crivaro v. Rader*, 469 N.E.2d 1184, 1187 (Ind. Ct. App. 1984). "In

*Crivaro,* another panel of this Court adopted the former approach, declining the invitation to

adopt a 'tolling' rule that would essentially grant the counterclaimant additional time for

asserting a counterclaim." *Delacruz v. Wittig*, 42 N.E.3d 557, 561 (Ind. Ct. App. 2015). Thus,

BCS's counterclaims do not relate back to Vanguard's complaint and the statute of limitations

was not tolled following the filing of the complaint. The two-year limitation under § 34–11–2–4

still applies to BCS's counterclaims even if they are compulsory. BCS did not file its original

counterclaim until February 15, 2019. As the Court will explain in depth below, the date of

interference or damage for each of these claims occurred at the very latest in 2016. Thus, even

assuming the latest possible date of interference, BCS is still precluded by the two-year statute of

limitations from asserting these claims.

    In response BCS argues that the doctrine of continuing wrong applies to its

counterclaims, which tolls the statute of limitations. The doctrine of continuing wrong applies

when a course of conduct combines to produce an injury that "was of a continuous nature."

*Garneau v. Bush*, 838 N.E.2d 1134, 1143 (Ind. Ct. App. 2005). The statute of limitations is tolled

until the end of a continuing wrongful act. *Gumwood HP Shopping Partners, L.P. v. Simon Prop.*

*Grp., Inc.*, 36 N.E.3d 2, 4 (Ind. Ct. App. 2015). "This does not mean, however, that the plaintiff

may sit idly by if he discovers facts that alert him that he has a cause of action." *Parks v.*

---

[7] The Court recognizes BCS's counterclaims to be affirmative as they could have been maintained independent of Vanguard's action, which is in contrast to defensive counterclaims that focus on recoupment or recovery. *See* D*elacruz v. Wittig*, 42 N.E.3d 557, 560 (Ind. Ct. App. 2015).

*Madison County,* 783 N.E.2d 711, 719 (Ind. Ct. App. 2002). But, "[d]rawing the line between something that amounts to a 'fresh act' each day and something that is merely a lingering effect of an earlier, distinct, violation is not always easy." *Pitts v. City of Kankakee*, 267 F.3d 592, 595 (7th Cir. 2001). Thus, for BCS's tortious interference claims, it "must demonstrate that the alleged injury-producing conduct was of a continuous nature." *Garneau v. Bush*, 838 N.E.2d 1134, 1143 (Ind. Ct. App. 2005). But for the reasons discussed below, the Court finds that BCS's claims each fail on this front as well.

      i.  *Count III: Tortious Interference with Contractual Relationship between BCS and Michigan Facilities*

BCS claims that both Vanguard and Dr. Posar solicited health care facilities in the Michigan service area that were under contract with BCS. BCS argues that while Mr. Clemente sent a cease and desist letter to Vanguard on June 7, 2016, which could serve as the earliest point in time at which it became aware of the tortious interference, Vanguard and Dr. Posar continued to violate the Marketing Agreement by soliciting facilities in Michigan well into 2019. In his deposition, Mr. Clemente testified that while the Marketing Agreement between BCS and Doctors Hospital was terminated on October 20, 2014, the obligation to stay in their respective geographic territories continued. [Exhibit D, Clemente Dep. 78:8-12]. Mr. Clemente also stated that he learned of Dr. Posar's tortious interference with BCS's contractual relationship with the Michigan facilities in April or May of 2016. [*Id.* at 138:11-18]. Finally, in June 2016, Mr. Clemente sent a cease and desist letter to Vanguard, Doctors Hospital, Dr. Posar, and Cameron Gilbert. [DE 104-16]. The letter states that BCS learned that Dr. Posar was actively pursuing BCS contracted facilities in Michigan and provided four examples of facilities where this was occurring. [*Id.* at 4].

Here, the Court agrees with Vanguard that BCS's claim for tortious interference with its facilities in Michigan is time-barred. Even assuming Vanguard continued to interfere with BCS's contracts in Michigan after the Marketing Agreement was terminated in 2014 or even after the cease and desist letter was sent in 2016, BCS did not file its counterclaim against Vanguard until 2019. The Court cannot find that Vanguard's alleged conduct is of such a continuous nature to toll the statute of limitations three years after BCS demanded the behavior stop. "The doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point." *Parks v. Madison Cty.*, 783 N.E.2d 711, 719 (Ind. Ct. App. 2002) (quotation omitted). Additionally, BCS has failed to demonstrate why the geographic limitations on competition would continue after the Agreement was terminated. Therefore, the Court grants Vanguard's motion for summary judgment on BCS's claim of tortious interference with its contractual relationship with the facilities in Michigan.

      ii.   *Count IV: Tortious Interference with a Contractual Relationship between BCS and Doctors Hospital*

BCS also claims that Vanguard tortiously interfered with its contractual relations with Doctors Hospital under the Marketing Agreement. BCS alleges that Dr. Posar had access to BCS's confidential information under the Marketing Agreement in management meetings to review referrals to Doctors Hospital [DE 85 at 14] and used this information to hire and recruit BCS clinicians and create promotional material in its advertising. *Id*. at 15. As a result of this activity, Dr. Posar and Vanguard violated the stated obligations as an affiliate under the Marketing Agreement to their financial benefit. In response, Vanguard and Dr. Posar again assert that this claim is time-barred. The Court agrees. BCS has supplied no evidence of Vanguard or Dr. Posar interfering with the Marketing Agreement terms beyond the cease and desist letter,

32

which was sent after the Marketing Agreement was terminated in 2014. Even taking the date of

the cease and desist letter in 2016, BCS did not file its counterclaim against Vanguard and Dr.

Posar until 2019, which is beyond the statute of limitations. Therefore, the Court grants

Vanguard's motion for summary judgment on this claim.

        *iii.*   *Count V: Tortious Interference with a Business Relationship between BCS and Dr. Bunin*

Finally, BCS alleges that Vanguard and Dr. Posar tortiously interfered with its business

relationship with Dr. Bunin and Dr. Dennis Padla. BCS describes both doctors as being key

employees of BCS whose duties were to assist BCS in fulfilling its obligations under the

Marketing Agreement. [DE 85 at 15]. Both doctors also had established relationships with

principals of the nursing homes and care facilities in Michigan. BCS asserts that Vanguard and

Dr. Posar were aware of the doctors' importance to BCS and hired them to help with their

activities in Indiana. [*Id*. at 16]. After hiring Dr. Bunin as an independent contractor, Vanguard

and Dr. Posar instructed him to start setting up meetings with nursing homes and care facilities in

Michigan so that they could solicit business from them. BCS also alleges that Vanguard and Dr.

Posar used Dr. Padla's reputation and expertise to induce nursing homes and care facilities in

Michigan to terminate their contracts with BCS and switch to Vanguard. Vanguard and Dr. Posar

encouraged Dr. Bunin to violate his employment obligations to BCS, to resign from BCS, and to

interfere with BCS's business relationships in Michigan.

Vanguard again asserts that BCS is barred by the statute of limitations from asserting this

claim. The Court again agrees. BCS's own exhibit demonstrates that Vanguard and Dr. Posar

terminated the relationship it had with Dr. Bunin on July 9, 2015. [DE 85-4]. Moreover, Mr.

Clemente testified in his deposition that he learned that Dr. Bunin was employed by Vanguard

when the termination letter was sent in 2015. [Exhibit D, Clemente Dep. 156:6-20]. Even

applying the doctrine of continuing wrong, BCS cannot allege that Vanguard continued to interfere with BCS's relationship with Dr. Bunin after terminating its arrangement with him in 2015. BCS learned of Vanguard's interference with Dr. Padla even earlier as Mr. Clemente testified that Vanguard and Dr. Posar tried to reduce Dr. Padla's involvement with BCS in 2013. [Exhibit D, Clemente Dep. 157:19-23]. Therefore, BCS is again prohibited by the statute of limitations from asserting this claim and the Court grants Vanguard's motion for summary judgment on this claim.

#### 4.  *Count VI: Fraud in the Inducement*

In support of its claim for fraud in the inducement, BCS argues that Dr. Cameron Gilbert, on behalf of Doctors Hospital, and Dr. Posar, individually and on behalf of Vanguard, promised BCS that they would not compete for BCS facilities in Michigan. BCS would not have entered into the Marketing Agreement without these assurances from Doctors Hospital and Vanguard. [DE 85 at 18-19]. Despite these promises, Dr. Posar and Vanguard intentionally solicited healthcare facilities in Michigan that were under active contract with BCS, which constitutes fraud in the inducement of the Marketing Agreement. [*Id*. at 20]. BCS asserts that Vanguard and Dr. Posar knew that such activities and solicitation breached the promises and assurances made to Mr. Clemente and BCS. As a result of the breach, BCS suffered substantial damage in lost business and profits.

"Fraudulent inducement occurs when a party is induced through fraudulent misrepresentation to enter into a contract." *Tru-Cal, Inc. v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 40, 45 n.6 (Ind. Ct. App. 2009). The required elements of fraudulent inducement are no different from the elements of actual fraud: "(1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) which caused the

claimant to rely upon the misrepresentation to the claimant's detriment." *Massey v. Conseco Servs., L.L.C.*, 879 N.E.2d 605, 611 (Ind. Ct. App.), *aff'd on reh'g*, 886 N.E.2d 581 (Ind. Ct. App. 2008) (quoting *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004)). Notably, "[a] knowing misstatement of facts that causes a signing of a writing is fraud." *Guar. Trust Life Ins. Co. v. Palsce*, 641 N.E.2d 1266, 1269 (Ind. Ct. App. 1994).

Vanguard argues that BCS's claim for fraud is predicated upon Dr. Posar and/or Vanguard's statements of future conduct—that they *would* not solicit any facility in Michigan. [DE 101]. Vanguard and Dr. Posar assert that BCS does not allege they made a statement of past or existing fact. The Court disagrees. BCS has supplied enough evidence indicating that it and its employees believed that the Marketing Agreement applied to Vanguard as well as Doctors Hospital. The fraudulent statement that BCS is relying upon is that Vanguard stated that the Marketing Agreement and all of its provisions applied equally to it, which is what led BCS to sign the contract. Mr. Clemente testified in his deposition that Dr. Posar promised him that he was bound by the Agreement and that he was agreeing to the terms of the Agreement—that he and Vanguard were obligated to not pursue BCS facilities in Michigan. [Exhibit D, Clemente Dep. 61:8-25]. Mr. Clemente went on to say that he was aware that, as a result of the Agreement applying to Vanguard, Dr. Posar and Vanguard would have access to BCS's information about their facilities under contract and that he would not have entered into the Agreement unless Vanguard agreed to not go after the facilities in Michigan. [*Id*. at 64:7-24]. Finally, as noted earlier, BCS alleges that some of the nursing homes under contract with it were approached by Dr. Posar and Vanguard in violation of the assurances made to BCS. [DE 104-17]. At least one of these facilities terminated its contract with BCS in 2015.

Thus, unlike as Vanguard argues, BCS's claim for fraudulent inducement is not premised upon future conduct, but the existing fact of whether the Marketing Agreement applied to Vanguard as well as Doctors Hospital. Vanguard also argues that since BCS is claiming the Marketing Agreement is a valid and binding written contract, it cannot proceed on its unjust enrichment claim due to Indiana law prohibiting unjust enrichment where a written contract controls. But parties may plead in the alternative and thus the Court will allow this claim to proceed at this time. *See Payday Today, Inc. v. Defreeuw*, 903 N.E.2d 1057, 1060 (Ind. Ct. App. 2009) ("Indiana Trial Rule 8(E)(2) allows a party to plead alternative and even inconsistent theories of recovery."). Moreover, the Court notes that the Agreement's integration clause does not prohibit the Court from considering parol evidence when it is being offered "to show that fraud, intentional misrepresentation, or mistake entered into the formation of a contract." *Am.'s Directories Inc., Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1066 (Ind. Ct. App. 2005) (citing *Krieg v. Hieber,* 802 N.E.2d 938, 944 (Ind. Ct. App. 2004)). Therefore, Vanguard's motion for summary judgment as to this claim is denied.

### 5.   *Count VII: Promissory Estoppel*

Finally, BCS argues that it was assured by Dr. Posar that neither he nor Vanguard would solicit any facility in Michigan with an active contract with BCS. Dr. Cameron Gilbert, Doctors Hospital, Dr. Posar, and Vanguard promised to cooperate with BCS and assist each other with their respective businesses. In reliance upon these promises made by Vanguard and Dr. Posar, BCS entered into the Marketing Agreement effective January 24, 2013. [DE 85 at 22]. BCS alleges that Vanguard and Dr. Posar should have reasonably expected it to have relied upon these promises and assurances in entering into the Marketing Agreement. Despite the promises made, BCS asserts that Dr. Posar and Vanguard intentionally solicited BCS healthcare facilities in

Michigan. As a result of Dr. Posar and Vanguard breaching these promises, BCS claims it has suffered substantial damage in lost business and profits.

When asserting a promissory estoppel claim, a party must establish five elements: "(1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 581 (Ind. 2007). "Promissory estoppel permits recovery where no contract in fact exists." *Hinkel v. Sataria Distrib. & Packaging, Inc.*, 920 N.E.2d 766, 771 (Ind. Ct. App. 2010). "When applicable, which [is] to say when the promise is definite enough to induce a reasonable person to rely . . . the doctrine makes the promise enforceable." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 868 (7th Cir. 1999).

Similar to the Unjust Enrichment claim, Vanguard claims that BCS's claim for promissory estoppel must fail because of the written Marketing Agreement. [DE 101]. Vanguard is arguing that a claim for promissory estoppel may not be asserted where a valid contract exists. BCS cites to cases noting that parties may plead in the alternative—to plead breach of contract or, if the court finds no contract was formed, then to plead for quasi-contractual relief in the form of promissory estoppel. [DE 104 at 24-25]. *See Costello v. Bd. of Trus. of Flavius J. Witham Mem'l Hosp.,* 2019 WL 6252258, at *6 (S.D. Ind. Nov. 22, 2019); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). "Indeed, it is precisely under such circumstances, where a promise is made but which is not enforceable as a 'contract,' that the doctrine of promissory estoppel is recognized." *First Nat. Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 955 (Ind. 1991). Thus, the fact that the Court is allowing BCS's claim for breach of contract to proceed does not automatically negate its claim for promissory estoppel.

37

And, the Court finds there remains a genuine issue of material fact as to whether Vanguard induced reasonable reliance on the part of BCS due to its promises to be bound by the terms of the Marketing Agreement. Therefore, Vanguard's motion for summary judgment is denied as to this claim.

## IV. CONCLUSION

Based on the foregoing, Dr. Bunin's and BCS's Motions for Summary Judgment are **GRANTED IN PART AND DENIED IN PART**.

1. The Court **GRANTS** Dr. Bunin's Motion for Summary Judgment on Count I (Breach of Contract) and notes that Dr. Bunin's counterclaim for breach of contract is now dismissed. These counts are DISMISSED WITH PREJUDICE.

2. The Court **GRANTS** Dr. Bunin's Motion for Summary Judgment on Count II (Constructive Fraud), Count III (Breach of Fiduciary Duty), and Count V (Tortious Interference). These counts are DISMISSED WITH PREJUDICE.

3. The Court **DENIES** Dr. Bunin's Motion for Summary Judgment on Count IV (Fraud) and Count VI (Unfair Competition).

4. The Court **GRANTS** BCS's Motion for Summary Judgment on Count II, Count V, the tortious interference with a contractual relationship claim, and Count VI. These counts are DISMISSED WITH PREJUDICE.

Vanguard's motion for summary judgment is also **GRANTED IN PART AND DENIED IN PART**.

1. The Court **DENIES** Vanguard's Motion for Summary Judgment on Count I (Breach of Contract), Count VI (Fraud in the Inducement), and Count VII (Promissory Estoppel).

2.   The Court **GRANTS** Vanguard's Motion for Summary Judgment on Count II

(Unjust Enrichment), Count III (Tortious Interference with a Contractual

Relationship), Count IV (Tortious Interference with a Contractual Relationship),

and Count V (Tortious Interference with a Business Relationship). These counts

are DISMISSED WITH PREJUDICE.

SO ORDERED.

ENTERED:  January 22, 2021

       /s/ JON E. DEGUILIO     
Chief Judge
United States District Court