UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NEUROLOGY AND PAIN MANAGEMENT ASSOCIATES, P.C. d/b/a VANGUARD ELDERCARE MEDICAL GROUP, <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> ANTHONY BUNIN AND BIO-BEHAVIORAL CARE SOLUTIONS, LLC, <br><br> Defendants. <br><br> BIO-BEHAVIORAL CARE SOLUTIONS, LLC, <br><br> Counter-Plaintiff, <br><br> v. <br><br> STEVEN POSAR, <br><br> Defendant. | Case No. 3:17-CV-35 JD |

**OPINION AND ORDER**

The Plaintiff and Counter-Defendant, Neurology and Pain Management Associates, d/b/a Vanguard Eldercare, ("Vanguard") has moved for the Court to reconsider portions of its order on the parties' cross-motions for summary judgment. (DE 131.) Specifically, Vanguard requests that the Court grant them summary judgment on two of BCS' counterclaims: Count I which is a breach of contract claim, and Count VII which is a promissory estoppel claim. For the reasons herein, the motion will be granted in part and denied in part.

**A. Background**

The Court assumes the parties are familiar with the factual and procedural history of this case, which is also outlined in detail in the Court's summary judgment order. (DE 112.) Accordingly, the Court will only provide a brief overview here. This case was initiated by Vanguard against Dr. Anthony Bunin and his employer Bio-Behavioral Care Solutions ("BCS"). BCS responded by filing several counter claims against Vanguard and its CEO Dr. Steven Posar. The parties then filed cross-motions for summary judgment which the Court granted in part and denied in part.

Related to these claims was a contract executed between BCS and Doctor's Hospital, and the affiliates of those parties, which is known as the Marketing Agreement ("Agreement"). Section 8 of this Agreement is titled "Restrictive Covenants." (DE 103 at 6.) Section 8.1.2 and 8.2 of the Agreement purported to limit the ability of BCS or Doctor's Hospital to engage in contracts with current clients of the other party within certain geographic areas. Section 8.1.2 restrains BCS and 8.2 restrains Vanguard. The relevant portion of Section 8.1.2 reads as follows:

> "BCS shall not enter into any agreement, oral or written, directly or indirectly, with any Facility under an active on-site mental health service contract with Hospital located in the Indiana Service Area to provide remote or on-site clinical mental health services at such Facility which is the same or similar to the mental health services rendered by Hospital or any affiliate of Physicians Hospital System…."

(DE 103 at 6.)

Section 8.2 reads as follows:

"Hospital or any affiliate of Physicians Hospital Services shall not enter into any agreement, oral or written, directly or indirectly, with any Facility within the Michigan

>Service Area under an active on-site mental health services contract with BCS to provide remote or on-site clinical services at the Facility which is the same or similar to the mental health services generally rendered by BCS or its affiliates."

(DE 103 at 6.)

As part of their counterclaims, BCS argues Vanguard is an affiliate of Doctor's Hospital and was bound by Section 8.2 of the Agreement when Vanguard entered contracts with covered clients. BCS argues this action, in violation of the Agreement, constitutes the breach of contract described in Count I of their complaint. Vanguard disputes that it is an affiliate of Doctor's Hospital and alleges the Agreement is unenforceable and legally void. Relatedly, Count VII of BCS' counterclaim brings a promissory estoppel claim alleging that Vanguard's promise to abide by the terms of the Agreement induced reasonable reliance by BCS.

**B. Legal Standard**

Vanguard seeks for the Court to reconsider its order pursuant to Federal Rule of Civil Procedure 60. This provision authorizes the court to relieve a party from a final judgment based on: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; or . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Rather, reconsideration is to be reserved for when the Court has "patently

misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)).

### C. Discussion

Vanguard argues that for both Count I and Count VII, the Court's summary judgment order did not address dispositive arguments which they made in their briefing. As such, they now seek the Court to address those arguments and grant them summary judgment. The Court grants Vanguard's motion in part and denies it in part. The Court grants Vanguard summary judgment for Count I. The Court denies Vanguard's motion as it relates to Count VII.

**(1)** *Vanguard is entitled to summary judgment on Count I as the contract allegedly underlying the breach is void*

Regarding the breach of contract claim in Count I, Vanguard argues that the Court did not address its argument that the contract underlying BCS' claim is legally void. Vanguard claims their briefing presented two arguments for why the contract was void. First, the contract was an unreasonable restraint of trade in violation of Indiana law and, second, the contract violated antitrust law. The Court will note that while these arguments are present in the summary judgment briefing, they only constituted minor portions of the parties' arguments.

The Court will begin with the antitrust argument. The Court finds this argument to be waived as underdeveloped. Vanguard's antitrust argument only makes a fleeting initial appearance in the brief they submitted in support of their motion for summary judgment. The

4

entire argument in this principal brief is a single footnote, without any citation to legal authority, which states that the Agreement is "arguably an improper effort by BCS to restrain trade between competitors in violation of Anti-Trust laws." (DE 101 at 13 n.3.)[1] The argument is developed somewhat in Vanguard's reply, with an additional full paragraph in the body of the reply brief and a single case citation.

This effort is inadequate to properly present an argument for consideration before the Court. Presenting the faintest whiff of an argument, absent legal authority, is insufficient to properly present an argument before a federal district court. *Shipley v. Chi. Bd. of Election Comm'rs,* 947 F.3d 1056, 1062–63 (7th Cir. 2020) (Holding that arguments which are "underdeveloped, cursory and lack supporting authority" are waived) (internal citation omitted). Vanguards' initial antitrust argument contains no legal substance and appears to merely be an invitation for the Court to fashion an antitrust argument on Vanguard's behalf. However, it is manifestly not the duty of the Court to craft a party's arguments on their behalf. *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011). Consequently, the Court will decline Vanguard's invitation to "fill this void [in their brief] by crafting arguments and providing the necessary legal research." *Shipley*, 947 F.3d at 1063 (quoting *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 842 (7th Cir. 2010)).

Vanguard's effort to provide the substance of their argument in the reply brief is insufficient to prevent the Court from finding this argument was waived. Arguments raised for the first time in a reply brief are considered waived because doing so leaves the opposing party

---

[1] Inexplicably, none of Vanguard's filings, either in briefing the motion for summary judgment or briefing this motion have page numbers. The Court therefore will refer to the documents by their CM/ECF generated page number. Vanguard's negligence in numbering their pages frustrates meaningful discussion of their arguments and is in clear violation of Local Rule 5-4(a)(6). Vanguard is ordered to comply with this rule in any and all subsequent filings.

with no chance to respond. *United States v. White*, 8 F.4th 547, 552 (7th Cir. 2021); *see also Smith v. Metro. Prop. & Cas. Ins. Co.*, 2020 WL 5946599, at *6 (N.D. Ind. Oct. 7, 2020) ("Because [the defendant] sprung this argument on [the plaintiff] for the first time on reply, the Court treats it as waived."). Accordingly, the Court deems Vanguard's Count I antitrust arguments waived as underdeveloped.

In contrast, Vanguard's argument that the Marketing Agreement constitutes an unreasonable restraint of trade in violation of Indiana law was not waived and has merit. Therefore, the Court will grant summary judgment for Vanguard on Count I of BCS' complaint.

The Court will briefly note that Vanguard's Indiana law argument is sufficiently developed in their principal summary judgment brief to avoid waiver. In their brief, Vanguard, after an extensive discussion of the privity issue, devotes a paragraph with a supporting case citation to argue that the Marketing Agreement is unenforceable as it lacks a time limitation and non-competition agreements without a time limitation are unenforceable under Indiana law.[2] (DE 101 at 13.) While rudimentary, this argument and supporting legal citation are sufficient to prevent the issue from being waived. This conclusion is further supported by the fact that BCS addressed this argument in their summary judgment response. (DE 104 at 15–16.)

While this argument was not waived it seems to have evaded the Court's attention at the summary judgment stage and was not addressed in the Court's summary judgment order. Therefore, the Court will fully address it now. In doing so the Court will consider the arguments raised by the parties in their original summary judgment briefing as well as the briefing for the motion to reconsider.

---

[2] The Court will note that there are no other challenges to the legal viability of the Marketing Agreement made in the motions for summary judgment besides the challenge to the restrictive covenant's time limitation.

6

Vanguard's argument is that in order to be enforceable under Indiana law, a non-competition covenant[3] can only impose "reasonable" limitations on the trade activity which the covenant is restraining. Vanguard argues the Marketing Agreement imposes an unreasonable limitation because there is no time limit on how long the Agreement would be active for. Therefore, because the Agreement imposes an unreasonable restraint on trade, it is unenforceable, and an unenforceable contract cannot serve as a basis for BCS' breach of contract claim.

BCS presents two arguments in response. First, that the Agreement does not contain a non-competition covenant. Second, that even if the Court construes the Agreement as containing a non-competition covenant, that covenant contains a reasonable time limitation.

BCS' first argument is that the Agreement does not contain a "typical non-competition clause" like the kind being discussed in Vanguard's proffered case law. (DE 104 at 16). BCS argues that unlike the "one-sided non-competition or non-solicitation clauses" that appear in employment contracts, the provisions of the Agreement are mutual obligations by respective parties to not tortiously interfere with each other's contracts. (*Id.*) Therefore, Vanguard's proffered caselaw on restraint of trade is inapposite to this case.

BCS does not cite any caselaw to support the Court finding such a distinction exists or that such a distinction would be meaningful. The only case which BCS cites regarding this argument is a Seventh Circuit case applying Illinois law and finding an employer-employee non-competition covenant to be reasonable and therefore enforceable. (*Id.* citing *Turnell v. CentiMark Corp.*, 796 F.3d 656 (7th Cir. 2015). Whether a non-competition covenant is

---

[3] The governing caselaw uses the phrases "non-competition agreement" and "non-competition covenant" interchangeably, for consistency's sake the Court will exclusively use the phrase "non-competition covenant."

reasonable is a wholly different question from whether a contract actually contains a non-competition covenant. Likewise, it is a wholly unrelated question from whether contractual agreements that restrain trade but claim to only be enforcing mutual tort law obligations are treated differently under the law from other restraints of trade. Further, as discussed in more detail below, the Indiana courts have explained Indiana law generally disfavors restrictive covenants and that principle is not limited to employer-employee covenants. Given the absence of legal support for BCS' first argument, the Court finds it waived. *Shipley*, 947 F.3d at 1062–63.

Moreover, even if there were legal support for finding this to be a meaningful distinction, the Court is not persuaded by BCS' characterization of the agreement as something other than a non-competition covenant. Section 8 of the Agreement is titled "Restrictive Covenants" which immediately places BCS' argument on a weak footing. Further, from the text of Section 8.2 it would appear to operate as a non-competition covenant. The Agreement bars Vanguard[4] from entering "into any agreement… with any Facility within the Michigan Service Area under an active on-site mental health service contract with BCS to provide remote or on-site clinical services at the Facility which is the same or similar to the mental health services generally rendered by BCS or its affiliates." (DE 104 at 16.)  In other words, the Agreement restrains Vanguard from plying its trade with any facility that BCS has a contract within in the Michigan Service Area. BCS provides no explanation why these terms are necessary in order to avoid tortious interference or how the Agreement was designed to do so, which further raises the Court's skepticism that this is anything besides a non-competition covenant.

---

[4] The Court will restate that the parties dispute whether Vanguard was even covered by the Agreement. For purposes of this order, the Court will assume the Agreement covers Vanguard.

8

The fact that section 8.1.2 imposes a largely reciprocal restraint on BCS' operations also does not persuade the Court. It is unclear why the presence of two non-competition covenants within a contract as opposed to one would change the legal nature of those non-competition covenants into something else.

BCS' second argument is that even if the Agreement contains a non-competition covenant, the Agreement contains reasonable limitations and is therefore enforceable under Indiana law.

Indiana courts have long held that covenants not to compete are generally disfavored by Indiana law. *Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 687 (Ind. 2005) (internal citations omitted). While the enforceability of covenants not to compete most often "arises in the context of a sale of a business or a contract between employer and employee" such covenants can be enforced if they are "ancillary to any lawful contract subject." *McCart v. H&R Block, Inc.*, 470 N.E.2d 756, 763 (Ind. Ct. App. 1984) (*trans. denied* as noted in *Norlund v. Faust*, 675 N.E.2d 1142, 1156 (Ind. Ct. App. 1997)) (internal citations omitted). That being said this rule is applied more stringently to employment related covenants than other types of contracts, such as sales of a business.[5] *Dicen*, 839 N.E.2d at 687 (applying the rule to a business sale contract but noting employment contracts are policed more stringently).

In determining whether a covenant is enforceable, courts must consider the facts and circumstances of each individual case including the legitimate interests of the covenantee and the protection which the agreement will provide to those interests. *McCart*, 470 N.E.2d at 763.

---

[5] The Court recognizes that the cases cited by Vanguard are almost exclusively reviewing employment covenants with the occasional reference to covenants related to the sale of a business. *See e.g. Dicen*, 839 N.E.2d at 687 (sale of business); *Coll. Life Ins. Co. of Am. v. Austin*, 466 N.E.2d 738 (Ind. Ct. App. 1984) (employment contract); *Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723 (Ind. 2008) (employment contract).

(internal citations omitted). Further, the terms of the covenant's restrictions must be reasonable and not contrary to public policy. *Dicen,* 839 N.E.2d at 687. (internal citations omitted); *McCart*, 470 N.E.2d at 763. The reasonableness inquiry is a question of law and is measured on the three axes of "time, space, and prohibited activity." *Dicen*, 839 N.E.2d at 687. Under the relatively liberal standard for non-employment contracts, non-competition covenants are considered reasonable when they are "limited to the area of business involved…." *Id.* at 688 (quoting *Donahue v. Permacel Tape Corp.*, 127 N.E.2d 235, 238 (1955)). If a covenant is unreasonable and incapable of being redacted to impose reasonable limits, then it will be unenforceable. *Young v. Zandt*, 449 N.E.2d 300, 304 (Ind. Ct. App. 1983).

As previously mentioned, Vanguard only argues that the Agreement is unreasonable in terms of its time limitation because there is no express time limit in the Agreement.[6] BCS concedes there is no express time limitation in the Agreement but nonetheless argues that the Agreement contains a reasonable time limitation. Namely, that the Agreement is limited to the time period in which a healthcare facility in question has a contract with BCS. (DE 133 at 4.)

The Court finds this argument to be without merit. The Indiana Supreme Court held in *Harvest Insurance Agency, Inc. v. Inter-Ocean Insurance Company* that, for purposes of covenant reasonableness analysis, such indefinite and potentially renewable time limitations are not time limitations at all. 492 N.E.2d 686, 690 (Ind. 1986). *Harvest Insurance* involved a non-competition covenant between the two named insurance companies, enacted after the termination of a business agreement where Harvest served as an agent for Inter-Ocean and selling Inter-

---

[6] The Court assumes, without deciding, that the Marketing Agreement was ancillary to a lawful contract subject, protected a legitimate business interest, and is not contrary to public policy. The Court does not reach the issues of whether the Agreement was reasonable in terms of its geographic scope or the scope of activity it prohibited.

Ocean's policies in a set geographic area. *Id.* at 687. The terms of the non-competition covenant precluded either party from soliciting Inter-Ocean policyholders to replace existing policies, functionally confining Harvest to selling only supplemental insurance to anyone holding an Inter-Ocean policy in their coverage area. *Id.*

Like the instant case, there was no time limitation in the covenant itself.[7] *Id.* The court ultimately found it was impossible to interpret the covenant to have a reasonable time limitation. The court found that the only limit which could be inferred from the covenant was that the parties intended it to apply only to policies in force at the moment they terminated their business arrangement, and the restriction therefore might only endure for the duration of any given insurance policy. *Id.* at 689–90. The court found this could not constitute a reasonable time limitation because the lifespan of the Inter-Ocean policies "in force at the [time of the] termination of the agency relationship is unascertainable." *Id.* at 690. Further, if Inter-Ocean continuously renewed those policies, it would effectively preclude Harvest from competing, by seeking to replace those policies, for an indefinite period. *Id.*

The Court finds BCS' proposed limitation to be substantively similar to the one rejected as unreasonable in *Harvest Insurance*. It is unclear what the lengths of any of BCS' existing contracts are and whether those durations are a reasonable period to preclude competition by Vanguard. Further, if BCS were to continuously renew its contracts with its existing clients, that would indefinitely preclude Vanguard from soliciting those clients and competing with BCS.

---

[7] Neither party has requested the Court attempt to redact the Agreement to make the remaining portions enforceable as is permitted under the so called "blue pencil" doctrine. *See Van Zandt*, 449 N.E.2d at 304. Even if they had, the Court could not deploy that doctrine to salvage the Agreement given the blue pencil doctrine limits the court to striking unreasonable provisions and enforcing reasonable provisions, not inserting new provisions to the contract. *Id.* The sheer absence of a time limitation in the Agreement therefore means there is no modification the Court could make which would salvage the Agreement. *See Distributor Svc., Inc. v. Stevenson*, 16 F.Supp.3d 964, 977 (S.D. Ind. 2014).

The Court cannot conclude that a potentially indefinite duration constitutes a reasonable temporal limitation. The Court recognizes that *Harvest Insurance* is applying "the stricter scrutiny utilized in reviewing employer-employee covenants." *Id.* at 689.

While the instant case does not deal with an employer-employee covenant, *Harvest Insurance*'s logic remains persuasive even under a more generous standard as it is hard to conceive how a potentially indefinite restraint on trade could ever be considered reasonable. From the Court's research the Indiana courts have only found relatively short and fixed terms of years to be reasonable time limitations. *See e.g. Dicen*, 839 N.E.2d at 688 (finding five-years to be a reasonable time limit); *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276 (Ind. 1983) (finding a two-year term to be a reasonable time limitation). The Court notes that BCS makes no argument that a potentially indefinite covenant should be considered reasonable.

Consequently, the Court finds that the Agreement's lack of a time limitation makes it an unreasonable restraint of trade under Indiana law, and it is therefore unenforceable and void. Accordingly, BCS has no enforceable contract to sustain their breach of contract claim and Vanguard is entitled to summary judgement on Count I of BCS' counterclaim. *See Niezer v. Todd Realty, Inc.*, 913 N.E.2d 211, 215 (Ind. Ct. App. 2009) (existence of a contract is a vital element of a breach of contract claim); *Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 478 n.3 (Ind. Ct. App. 2001) (a void contract has no legal effect and is equivalent to no contract existing at all).

**(2) *Vanguard is not entitled to summary judgment on Count VII as they waived their statute of frauds argument***

Vanguard argues that the Court should have also considered their argument that BCS' promissory estoppel claim in Count VII is barred by the Statute of Frauds. The Court finds this argument to be waived as underdeveloped.

Vanguard's statute of frauds argument is not discussed in their principal brief. Rather, it appears for the first time in their reply brief. This means BCS never had an opportunity to address it. For the same reasons discussed with Vanguard's antitrust claims, this is not the proper way to raise an argument in federal court. *White*, 8 F.4th at 552; *Smith*, 2020 WL 5946599 at *6. Accordingly, the Court finds Vanguard waived this argument and they are not entitled to summary judgment on Count VII.

The Court also notes that its' previous summary judgment holding on Count VII is not otherwise affected by the new finding regarding Count I. The Court's summary judgment order held that the principal reason not to grant summary judgment on Count VII was that there was a genuine dispute of material fact over whether the parties had a valid contract which would preclude the estoppel claim. (DE 112 at 36–37.) While that issue is resolved with the Court's amended ruling on Count I, the Court's alternative holding for denying summary judgment still stands. The alternative holding was that summary judgment would be inappropriate due to a genuine dispute of material fact over whether Vanguard induced reasonable reliance on the part of BCS due to its promises to be bound by the terms of the Agreement. (*Id.* at 37–38.) Vanguard has not asked for reconsideration of this holding and therefore the Court will not revisit it. Accordingly, Vanguard's motion to reconsider and grant summary judgment on Count VII is denied.

### *(3) The Court requires supplemental briefing on Count VI of BCS' counterclaim in light of this motion*

The Court will also address an implication of the above order. The Court is uncertain whether, in light of granting Summary Judgment on Count I of BCS' counterclaim, Count VI of BCS' counterclaim for fraudulent inducement can also survive. "Fraudulent inducement occurs when a party is induced through fraudulent misrepresentation to enter into a contract." *Tru-Cal Inc. v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 40, 45 n.6 (Ind. Ct. App. 2009). The contract underlying BCS' claims is the Marketing Agreement, which the Court has just found to be legally void as unenforceable. Whether an unenforceable contract can be the basis for a fraudulent inducement claim seems to be an issue of first impression in Indiana. From the Court's research, the two other state courts to reach the issue have held it cannot. *Clifford R. Gray, Inc. v. LeChase Const. Servs., LLC*, 31 A.D.3d 983, 986 (N.Y. App. Div. 2006) ("there can be no viable claim for fraudulent inducement to enter an unenforceable contract"); *Haase v. Glazner*, 62 S.W.3d 795, 797–98 (Tex. 2001).

However, as the parties have not briefed this issue the Court will not decide it in this motion. Rather, the Court will grant BCS 14 days from the date of this order to file either a supplemental brief on this issue or notice that they seek to dismiss that specific counterclaim. To restate, the issue the brief should address is whether there can be a viable claim for fraudulent inducement to enter into an unenforceable contract under Indiana law. Should BCS elect to file a brief, Vanguard will have 14 days from the deadline of that brief to file a response, and BCS will have 7 days from the deadline for Vanguard's response in order to file their reply.

### **D. Conclusion**

For the previously discussed reasons, Vanguard's motion is GRANTED in part and DENIED in part. (DE 131.) The Court GRANTS Vanguard's motion for summary judgment on Count I (Breach of Contract) of BCS' complaint. This count is DISMISSED WITH PREJUDICE. The Court DENIES Vanguard's motion for summary judgment on Count VII (promissory estoppel) of BCS' complaint. BCS is ORDERED to file a notice within 14 days of this order to provide briefing "whether there can be a viable claim for fraudulent inducement to enter into an unenforceable contract under Indiana law" or indicating they intend to dismiss Count VI (fraudulent inducement) of their counterclaim.  If BCS chooses to file a brief, Vanguard will have 14 days from the date that brief is due to file a response. BCS will then have 7 days from the response deadline to file a reply.

SO ORDERED.

ENTERED: September 16, 2022

       /s/ JON E. DEGUILIO
Chief Judge
United States District Court