UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NEUROLOGY AND PAIN MANAGEMENT ASSOCIATES, P.C., <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY BUNIN, et al., <br><br> Defendants. | Case No. 3:17-CV-35 JD |

### OPINION AND ORDER

In this Court's prior order, it invited Defendant and Counter-Plaintiff Bio-Behavioral Care Solutions LLC ("BCS") to provide supplemental briefing on "whether there can be a viable claim for fraudulent inducement to enter into an unenforceable contract under Indiana law." (DE 136 at 14.) Because BCS failed to adequately address that issue, and because other states have held that such a claim is not viable, the Court now dismisses the counterclaim for fraudulent inducement (Count VI of the Amended Complaint).

Prior to addressing the dismissal of Count VI, the Court briefly reviews the relevant factual background and procedural history. Both BCS and Neurology and Pain Management Associates, d/b/a Vanguard Eldercare ("Vanguard") manage and provide general services to various mental health and senior living facilities. In January 2013, BCS entered into a Marketing Agreement with Doctors Behavioral Hospital ("Doctors Hospital") in which BCS agreed to provide marketing and consulting services to Doctors Hospital. Section 8.2 of the Marketing Agreement provided a restrictive covenant where BCS agreed not to compete with Doctors Hospital in Indiana, and, in turn, Doctors Hospital, including any of its affiliates, agreed not to

compete with BCS in Michigan. According to BCS, Vanguard was an affiliate of Doctors Hospital and thus barred from competing with BCS in Michigan.

The issue before the Court has to do with the counterclaims BCS filed against Vanguard and its CEO Dr. Steven Posar. (DE 85.) These counterclaims stemmed from Vanguard allegedly making false representations leading BCS to enter into the Marketing Agreement and then violating the Marketing Agreement by approaching nursing homes and extended care facilities in the Michigan Service Area. BCS filed an Amended Complaint bringing claims for breach of contract (Count I), unjust enrichment (Count II), three counts of tortious interference with a contractual or business relationship (Counts III, IV, and V), fraud in the inducement (Count VI), and promissory estoppel (Count VII). (DE 85.)

At summary judgment, the Court dismissed the claim for unjust enrichment because there was no evidence showing that BCS expected payment from Vanguard, which is a required element in such a claim. *See Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012) ("To recover under an unjust enrichment claim, a plaintiff must generally show that he rendered a benefit to the defendant at the defendant's express or implied request, *that the plaintiff expected payment from the defendant*, and that allowing the defendant to retain the benefit without restitution would be unjust."). The Court also dismissed each of the three claims for tortious interference because they were barred by the applicable statute of limitations. (DE 112 at 31–34.) Therefore, BCS' only remaining claims against Vanguard and Posar were for breach of contract, fraud in the inducement, and promissory estoppel.

Vanguard then asked the Court to reconsider its summary judgment order. (DE 131.) Vanguard argued that the order did not address the enforceability of Section 8.2 of the Marketing Agreement and that "the lack of any time restraint in Section 8.2 of the Marketing Agreement . . .

renders Section 8.2 void and unenforceable as a matter of law." (DE 132 at 2.) If Section 8.2 were unenforceable, then Count I of BCS' Amended Complaint for breach of contract should have been dismissed. Vanguard therefore asked that the Court reconsider its prior opinion and dismiss Count I of BCS' Amended Complaint. Vanguard also asked the Court to reconsider its denial of summary judgment as to BCS' promissory estoppel claim. (*Id.*) According to Vanguard, the Court failed to address whether the statute of frauds prevented BCS from pursuing a claim of promissory estoppel.

The Court issued an order partially granting Vanguard's motion. (DE 136.) The Court first found that the Marketing Agreement was unenforceable and void because the "lack of a time limitation [made] it an unreasonable restraint of trade under Indiana law[.]" (*Id.* at 12.) Accordingly, the Court dismissed BCS' contract claim. The Court then found that Vanguard was not entitled to summary judgment on the claim of promissory estoppel because it waived that issue at summary judgment by waiting until its reply brief to raise it. (*Id.* at 13.) Therefore, BCS' only remaining claims against Vanguard were for fraudulent inducement and promissory estoppel. However, the Court asked BCS to provide briefing on an unaddressed issue:

> The Court is uncertain whether, in light of granting Summary Judgment on Count I of BCS' counterclaim, Count VI of BCS' counterclaim for fraudulent inducement can also survive. "Fraudulent inducement occurs when a party is induced through fraudulent misrepresentation to enter into a contract." *Tru-Cal Inc. v. Conrad Kacsik Instrument Sys., Inc*., 905 N.E.2d 40, 45 n.6 (Ind. Ct. App. 2009). The contract underlying BCS' claims is the Marketing Agreement, which the Court has just found to be legally void as unenforceable. Whether an unenforceable contract can be the basis for a fraudulent inducement claim seems to be an issue of first impression in Indiana. From the Court's research, the two other state courts to reach the issue have held it cannot. *Clifford R. Gray, Inc. v. LeChase Const. Servs., LLC*, 31 A.D.3d 983, 986 (N.Y. App. Div. 2006) ("there can be no viable claim for fraudulent inducement to enter an unenforceable contract"); *Haase v. Glazner*, 62 S.W.3d 795, 797–98 (Tex. 2001).

(DE 136 at 14.)

BCS then filed a brief addressing several topics, none of which concern whether an unenforceable contract can be the basis for a fraudulent inducement claim. (DE 137.) The only argument BCS raises that relates to its fraudulent inducement claim is its assertion that it has a "viable claim for fraud in the inducement separate and apart from the Marketing Agreement and its Section 8.2." (*Id.* at 2.) In support of this assertion, BCS indicates that Vanguard and its CEO made verbal assurances and promises that they would not interfere with existing contracts and business relationships. But promises and assurances alone do not make a contract. *Perrill v. Perrill*, 126 N.E.3d 834, 840 (Ind. Ct. App. 2019) ("The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds between the contracting parties on all essential elements or terms of the transaction."). Not once does BCS indicate what other *contract*, outside the Marketing Agreement, it was fraudulently induced into entering. Given that fraudulent inducement only "occurs when a party is induced through fraudulent misrepresentations to enter into a *contract*," *Am.'s Directories Inc., Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1068 (Ind. Ct. App. 2005) (emphasis added), the failure to identify any other contract it was fraudulently induced to enter defeats BCS' argument that it has a claim for fraudulent inducement separate from the Marketing Agreement.

The Court understands why BCS had trouble identifying another contract outside the Marketing Agreement. After all, BCS has repeatedly identified the *Marketing Agreement* as the contract it was fraudulently induced into entering. For example, in Count VI of its Amended Complaint, BCS alleged that "without [the assurances provided by Posar on behalf of Vanguard] BCS would not have entered into the *Marketing Agreement*," that "the Conduct of Defendant Posar and Counter-Defendant Vanguard constitutes fraud in the *inducement of the Marketing Agreement*" and that they knew their conduct "breached the promises and assurances made to

Robert Clemente and BCS as described above and *confirmed in the Marketing Agreement*." (DE 85 ¶¶ 101, 109–10 (emphasis added).) Later, BCS argued at summary judgment that dismissal of its fraudulent inducement claim was not warranted because BCS "signed the Marketing Agreement" based on representations that neither Dr. Bunin nor "Vanguard would pursue contracts with health care facilities in the Michigan Service Area that were under contract with BCS." (DE 104 at 29.) BCS' recital of the various promises made by Vanguard and Posar simply distracts from the fundamental issue: BCS has never alleged there was another contract it was fraudulently induced into entering outside the Marketing Agreement and is unable to point to any facts supporting that there was another contract.

BCS' failure to identify any other contract brings the Court back to its initial request for further briefing on whether, given the Marketing Agreement's lack of enforceability, Indiana law allowed for the fraudulent inducement claim to survive. (DE 136 at 14.) In its response, Vanguard argues that an unenforceable contract cannot be the basis of a fraudulent inducement claim, relying on the two state court cases this Court previously identified: *Clifford R. Gray, Inc. v. LeChase Const. Servs.*, LLC, 31 A.D.3d 983, 986 (N.Y. App. Div. 2006) ("There can be no viable claim for fraudulent inducement to enter an unenforceable contract."); and *Haase v. Glazner*, 62 S.W.3d 795, 797–98 (Tex. 2001) (same).

First, the Court finds that BCS has waived any argument that a fraudulent inducement claim may be based on an unenforceable contract. In its briefing, BCS does not address, in any manner, the question raised by this Court, the arguments raised by Vanguard, or the holdings of *Haase* and *Clifford R. Gray, Inc*. Therefore, any argument that a fraudulent inducement claim can be based on an unenforceable contract is waived. *United States v. Berkowitz*, 927 F.2d 1376,

1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .").

Even if the Court reached this argument's merits, the reasoning in *Haase* is equally applicable in Indiana. In *Haase*, the Supreme Court of Texas held that a fraudulent inducement claim is not viable in the absence of an enforceable contract because, without an enforceable contract having been entered, a party cannot be said to have "relied to its detriment on an alleged misrepresentation," which is an "essential element of a fraud claim" in Texas. *Haase*, 62 S.W.3d at 798. As in Texas, an essential element of fraudulent inducement claim in Indiana is that the complaining party rightfully rely on a false material representation. *Wind Wire, LLC v. Finney*, 977 N.E.2d 401, 404 (Ind. Ct. App. 2012). Accordingly, without showing that the party was induced into entering an enforceable contract, it would not have suffered the detrimental reliance required to bring a fraudulent inducement claim. Therefore, on the merits, the Court finds that Count VI must be dismissed, given that the Marketing Agreement is unenforceable.

Rather than address the issue this Court identified, BCS spends most of its briefing rehashing its previously dismissed claims for tortious interference and constructive fraud. (DE 137; DE 139.) BCS also argues that it has a valid claim for Promissory Estoppel, which is odd considering this is precisely what the Court held in its prior order addressing Vanguard's motion for reconsideration. (DE 136 (reiterating "summary judgment [on the promissory estoppel claim] would be inappropriate due to a genuine dispute of material fact over whether Vanguard induced reasonable reliance on the part of BCS due to its promises to be bound by the terms of the Agreement."). These claims have each been addressed previously and the Court did not invite BCS to relitigate them. Accordingly, the Court does not consider these arguments.

For the above reasons, the Court DISMISSES BCS' claim for fraudulent inducement in Count VI of its Amended Complaint. (DE 85.)

SO ORDERED.

ENTERED: April 12, 2023

                                            /s/ JON E. DEGUILIO
Chief Judge
United States District Court